STATE of Tennessee, Appellee,

v.

Herman Douglas HOOSIER, Appellant.

Court of Criminal Appeals of Tennessee,
at Nashville.

Feb. 4, 1982.

Permission to Appeal Denied by
Supreme Court April 5, 1982.

Robert W. Wedemeyer, Clarksville, for appellant.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Nashville, John J. Hestle, Dist. Atty. Gen., Clarksville, for appellee.

## OPINION

TATUM, Judge.

The defendant, Herman Douglas Hoosier, was convicted of armed robbery with punishment fixed at confinement in the State penitentiary for a term of 25 years. On this appeal, he says that the evidence is insufficient to support the verdict, that he was denied a speedy trial, that the trial judge erred in instructing the jury, that the selection of the grand jury and its foreman was racially discriminatory, that the Tennessee system of appointing counsel for indigents is unconstitutional, and that due to a mental defect, he was deprived of a fair trial. We find no merit in the issues assigned.

The defendant was convicted of robbing the St. Bethlehem Branch of the First National Bank of Clarksville on November 15, 1979. We will first discuss the issue attacking the sufficiency of the evidence to support this conviction. Several State's witnesses testified that robbers, wielding firearms, entered the bank and robbed it. After the robbery, they left in an old Buick automobile. The branch manager and a customer followed the Buick in another automobile. A police officer, who had received an alarm that the robbery was in progress, joined in the pursuit. After a time the Buick stopped and the four men in it continued the flight in a later-model Plymouth automobile, which was waiting for them. The pursuers had no difficulty in keeping up with the fleeing bank robbers as their flight was hampered by a slow-moving farm vehicle. When the Plymouth turned down a road which was a dead-end, it was forced to stop. Five men, including the defendant, were in the Plymouth. A pistol was found at the point where the Buick was abandoned. A rifle and another pistol, with ammunition, were found in the Plymouth. Currency, which included "bait bills" and which had been stuffed in three separate pillowcases, was also found in the Plymouth. Four ski-type masks were found inside the Plymouth automobile and a fifth mask was found in the trunk. When the defendant observed the bank customer at the scene of his apprehension, he told one of his companions that the customer was the "son of a bitch who was at the bank." The robbers were not out of the sight of the pursuers longer than 2 seconds from the time they left the bank until they were apprehended in the Plymouth automobile.

The defendant testified that previous to the robbery, he was approached by Special Agents of the Federal Bureau of Investigation and requested to furnish information concerning bank robberies. He testified that on the night before this robbery, he received information that it was planned. Hoping to procure information for the FBI, but without contacting them, he rode his bicycle to a point on the getaway route and got into the Plymouth with five bank robbers while the Plymouth was moving. According to the defendant, after the Plymouth stopped, one of the bank robbers slipped away and was not seen by the officers or other State's witnesses at the scene.

The four alleged accomplices of the defendant, all of whom had previously been convicted, testified that the defendant was not at the bank when it was robbed. Their testimony conflicted in many respects with that of the defendant and with each other. They had given prior statements to the FBI

implicating the defendant as being involved at the bank. One of the accomplices testified that he (the accomplice) did not go to the bank but picked the others up in the Plymouth. The bicycle of the defendant was not found in the area where he said he had left it.

The defendant had indeed been talking with the FBI about being an informant. Two FBI agents testified at trial but their testimony, and other circumstantial evidence, refuted the defendant's theory that he was acting for the FBI.

■ We find abundant evidence upon which a rational trier of fact could be convinced beyond a reasonable doubt of the defendant's guilt. Therefore, we must overrule the issue attacking the sufficiency of the evidence. Rule 13(e), T.R.A.P.; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Next, the defendant states that he was denied a speedy trial. He was indicted on December 3, 1979 and was tried on May 27, 1980. On January 11, 1980, the defendant filed motions for severance and dismissal of the indictment. These motions were argued on February 14, 1980. On March 4, 1980, the defendant renewed his motion to sever from codefendants and it was granted. The codefendants were tried prior to the defendant and the defendant's case was originally set for March 20, 1980. On that day, it was reset to May 27, 1980 because a crucial State witness was not available and because members of the jury panel had served during the trial of three other defendants, and had heard a guilty plea as to the fourth codefendant. The defendant's trial began on May 27, a period of 176 days after indictment. We do not find that the period from indictment to trial denied the defendant his constitutional right to a speedy trial. There was no needless, vexatious, or oppressive delay. See *Smith v. State*, 512 S.W.2d 619 (Tenn.Cr.App.1974).

■ Moreover, the defendant did not request a trial until March 20, 1980 when he objected to the continuance. There was a valid reason for the continuance; that is, a

State's witness was unavailable and the trial judge was apprehensive that the defendant would be prejudiced by using the same jury panel for his trial that was used in trying the codefendants. The defendant was not prejudiced by the continuance. Though we do not think that the time factor denied the defendant a speedy trial, we have considered the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and find that they weigh against the defendant's contentions. This issue is overruled.

■ In the next issue, the defendant says that the trial court erred in failing to instruct the jury as to the elements of the offense of accessory after the fact. The defendant properly concedes that "accessory after the fact is not a lesser included offense of armed robbery," and gives no reason why he conceives that this charge should have been given. The defendant was not indicted as an accessory after the fact as defined by T.C.A. § 39–112. The offense of accessory after the fact is a separate and distinct crime from that of a principal. *Monts v. State*, 214 Tenn. 171, 379 S.W.2d 34 (1964). The trial judge properly refused to submit the issue to the jury as to whether the appellant was guilty as an accessory after the fact. *State v. Lampkin*, 619 S.W.2d 520 (Tenn.1981); *Howard v. State*, 578 S.W.2d 83 (Tenn.1979).

■ In his next issue, the defendant says that the trial judge should have dismissed the indictment because the foreman and the grand jury that indicted him were selected through a procedure that was inherently discriminatory. The trial judge conducted a hearing on the motion and found the facts to be contrary to the defendant's insistence. The evidence heard at the hearing on the motion is not in the record. Therefore, we have nothing to review on this issue and must overrule it. Rule 13(c), T.R.A.P.

■ Next, the defendant states that the Tennessee system by providing for the appointment and compensation of counsel deprives a defendant of effective assistance of counsel. The basis for this contention is

that a limit is fixed for which counsel can be compensated and because counsel's claim for "out of pocket expenses" must be approved by the court. This issue is frivolous. Appointed counsel's professional responsibility and ethical obligations are the same as that of retained counsel regardless of whether he is compensated, or the amount of his compensation.

■ In his last issue presented, the defendant states that he was suffering from a mental defect at the time of trial which prevented him from cooperating with his attorney, thereby depriving him of a fair trial.

The defendant made no issue concerning a mental infirmity until after trial. While the motion for a new trial was pending, the defendant filed a motion for a mental examination which was granted. The expert who examined the defendant testified at the hearing on the motion for a new trial that the defendant was suffering from a personality disorder but he was not suffering with a mental illness that would prevent him from being tried nor was he legally insane when the offense was committed.

Other evidence, including the testimony of the defendant's attorney, indicated that the defendant was rational and cooperative with his attorney until he was placed upon the witness stand to testify. While testifying, he became angry at his attorney and attempted to discharge him in the presence of the jury. He was able to respond to questions although his version of the events was incredible. Although the defendant did not make a good witness, this is not the test for insanity.

It is apparent that the court-appointed attorney for the defendant made a vigorous effort for him. We appreciate counsel's effort but we must respectfully overrule the issues presented.

The judgment of the Criminal Court is affirmed.

O'BRIEN and DUNCAN, JJ., concur.