**STATE of Tennessee Appellee,**

v.

**James Larry CHAPMAN, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 18, 1986.

Permission to Appeal Denied by Supreme Court Nov. 3, 1986.

Jerry W. Laughlin, Greeneville, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Bettye Springfield-Carter, Asst. Atty. Gen., Nashville, James Pryor, Asst. Dist. Atty. Gen., Greeneville, for appellee.

## OPINION

DWYER, Judge.

The defendant was convicted in three counts for committing forgery, T.C.A. § 39-3-803, over two hundred dollars and three counts of passing a forged instrument, T.C.A. § 39-3-804, over two hundred dollars. For each of these former counts, defendant was sentenced to four years imprisonment, each sentence to run concurrently with the others and with the sentences of the latter counts. For each of the latter counts, defendant was sentenced to six years, to run consecutively.

The issues: (1) and (2) whether the trial court correctly denied defendant's motion to suppress the in-court identification testimony of witnesses based on the alleged prejudicial nature of the photographic array and post-arrest lineup conducted of defendant without the presence of counsel; (3) whether the trial court correctly denied defendant the right to a court-appointed expert to examine the handwriting exemplars of the defendant; (4) whether the trial court correctly refused to dismiss the count of the indictment alleging the forgery of a check with the intent to defraud the First National Bank of Knoxville when it is alleged that there is no such entity; and (5) whether the trial court correctly ordered consecutive sentences.

With no attack on the sufficiency of the evidence it suffices to state that appellant on three occasions passed forged checks in excess of two hundred dollars in Greene County, Tennessee, for which he was apprehended. The evidence from our review meets T.R.A.P. 13(e) standards.

The first and second issues: The first two issues presented pertain to the lineup procedures utilized by the investigating officer in two separate lineups that were conducted. The first was a photographic lineup consisting of an array of six photographs shown to the three principal witnesses prior to the arrest of the defendant. All of these photographs were in color; except the record suggests that the photo of the defendant was a different shade or color from the others. The second was a scan by one of the principal witnesses, con-

ducted at the jail without the presence of counsel. Appellant contends that both identification procedures were so unreasonable as to lead to the likelihood of irreparable misidentification.

 This court has recognized that a violation of due process may occur in a suggestive identification procedure even in the earliest stages of a criminal investigation. In deciding whether there has been a violation, the court must view the "totality of circumstances." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *State v. Beal*, 614 S.W.2d 77, 82 (Tenn.Crim.App.1981). Due process has been violated if the court finds that the identification procedure was so suggestive as to give rise to "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Where a witness's in-court identification is tainted by an unconstitutional pretrial identification, then the in-court identification is not admissible in evidence. *State v. Shanklin*, 608 S.W.2d 596, 598 (Tenn.Crim.App.1980); *Holt v. State*, 591 S.W.2d 785 (Tenn.Crim.App.1979); *Sloan v. State*, 584 S.W.2d 461 (Tenn.Crim. App.1978).

 There was a pre-trial motion to suppress. In that hearing it was developed that the three merchants who allegedly received the checks from appellant had viewed a photographic array prior to his arrest. The photos reflected six individuals of which one was the appellant. The witnesses all identified from that array appellant as the man who gave them the forged checks. A warrant was then obtained resulting in appellant's arrest.

Subsequently, one of the merchants was called to the jail where he viewed the appellant in a scan with two uniformed officers and a jail trusty dressed in orange. The trial court correctly ruled out this counselless post-arrest identification. *State v. Mitchell*, 593 S.W.2d 280 (Tenn.1980). The trial court after questioning the witness satisfied itself that the post-arrest identification did not taint the photo array identification. The court also determined that the

witness's identification was based on the experience of receiving the check from the appellant. In view of this testimony, the testimony of the investigating officer, and a review by the trial judge of the photographs in question, the court found that neither the photo array nor the in-court identification was tainted. In other words, from the totality of the circumstances there was an independent basis for the identification. *Beal, supra.* We agree with the trial court's findings; the evidence supports his ruling. *State v. Tate*, 615 S.W.2d 161 (Tenn.Crim.App.1981). The first and second issues are overruled.

 The third issue: The appellant concedes under Tennessee law he was not entitled to a handwriting expert. *State v. Allen*, 692 S.W.2d 651, 654 (Tenn.Crim. App.1985). However, he urges under T.C.A. § 40–14–207(b), while recognizing its applicability to capital cases, we should adopt such a policy in non-capital cases. The short answer is that this court is without authority to adopt appellant's reasoning. Moreover, with the fingerprints being smudged and of no value there can be no prejudice in denying appellant's request for a fingerprint expert. This issue is overruled.

 The fourth issue: Did the trial court err in refusing to dismiss that count of the indictment alleging the forgery of a check with the intent to defraud the First National Bank of Knoxville when there is no such entity? Since the appellant failed to cite authority in support of this issue, it is waived. T.R.A.P. 27(a)(7); *State v. Scott*, 626 S.W.2d 25, 28 (Tenn.Crim.App.1981).

The issue of consecutive sentences: The law in Tennessee affords considerable discretion to a trial judge in deciding whether the sentence of a convicted person shall run concurrently or cumulatively. The exercise of this discretion by the trial judge, however, is reviewable on appeal. T.C.A. § 40–20–111.

The rationale for consecutive sentences is the protection of the public from further criminal conduct by the defendant. The object is to use consecutive sentencing,

where appropriate, to protect society from those who are unwilling to lead a productive life and resort to criminal activity in furtherance of their antisocietal lifestyle. *Gray v. State*, 538 S.W.2d 391, 393 (Tenn. 1976).

 It is clear that consecutive sentencing is reserved for five classes of offenders: (1) the persistent offender; (2) the professional criminal; (3) the multiple offender; (4) the dangerous mentally abnormal person; and (5) the dangerous offender. *Gray, supra.* Within the context of judicial discretion, the threshold consideration must be, "Does the defendant, his past criminal record or conduct, or the convictions presently before the trial court warrant the imposition of consecutive sentences within the standards prescribed by the Supreme Court in *Gray*?"

 In reaching its determination for consecutive sentences, the trial court considered enhancement factors pursuant to T.C.A. § 40–35–111 and others finding in pertinent part:

... These offenses involve more than one victim. There are other enhancement factors. One is the fact that you do have charges pending in several other jurisdictions. Another is that these offenses from the evidence show a[n] extensive or elaborate or professional scheme or plan that's widespread, and that coupled with the knowledge and testimony that I have, the use of aliases and many names in many states and moving from place to place would indicate a professional scheme or plan of professional activity.

And, of course, the fact that there are other charges in other jurisdictions which have not been resolved yet that show widespread, even in this area.

Another enhancement factor, in my judgment, as I've told you before has been a belligerent attitude demonstrated to the Court expressed here....

In relating these factors to the standards for consecutive sentencing as prescribed in *Gray*, the trial court's reasons are unclear.

The Supreme Court, in *Gray*, acknowledged precise definitions for each of the above categories. The "persistent offender" is one who has previously been convicted of two felonies or of one felony and two misdemeanors committed at different times when he was over 18 years of age. In the present case, the State was unable to produce evidence supporting any contention of prior convictions. Therefore, the appellant cannot be categoried as a persistent offender under the standards set forth in *Gray*.

The "professional criminal" is one who has knowingly devoted himself to criminal acts as a *major source of livelihood* or who has *substantial* income or resources not shown to be derived from sources other than criminal activity (emphasis added). Notwithstanding the trial court's conclusion that "these offenses from the evidence show a[n] extensive or elaborate or professional scheme or plan", we cannot agree that the appellant is a professional criminal as defined in *Gray*. This conclusion is unsupported by the record. According to the Court in *Gray*, the prior record on the multiple offender may have been good, but the crimes for which he has been convicted indicate criminal activity so *extensive and continuing for such a period of time* as to warrant consecutive sentencing (emphasis added). Here again, in the present case the appellant was convicted *sub judice* on three counts of forgery and three counts of passing a forged instrument, the events occurring on separate dates within a month's time. It is beyond dispute that forgery and uttering a forged instrument are separate and distinct offenses, and neither is included within the other. *Anderson v. State*, 553 S.W.2d 85 (Tenn. Crim.App.1977). However, the six offenses result from three single incidents.

We cannot conclude that these convictions indicate criminal activity so extensive and continuing for such a period of time as to warrant consecutive sentencing as a multiple offender. Furthermore, we cannot accept the trial court's reliance on an "understanding" by the prosecutor that the defendant has additional charges pending in other jurisdictions as a basis for finding the defendant to be a multiple offender under *Gray* and its progeny. Moreover,

we are not persuaded by the trial court's reliance on the defendant's belligerent attitude as demonstrated toward the court as a justification for consecutive sentencing. Nothing in the record suggests that the appellant is mentally abnormal or a dangerous offender.

The burden of proving that consecutive sentencing is warranted rests with the State. *State v. Barker*, 642 S.W.2d 735 (Tenn.Crim.App.1982). While this Court is respectful of the discretion provided by the law to trial judges in deciding whether to run the sentence of a convicted person concurrently or consecutively, that judicial discretion must be predicated upon the standards enumerated in *Gray v. State, supra*.

We cannot concur that the trial court has appropriately done so.

The issue having merit is sustained; the consecutive judgments are therefore ordered to run concurrently. The judgment as modified is affirmed.

WALKER, P.J., and SCOTT, J., concur.