**STATE of Tennessee, Appellee,**

v.

**Marshall Howard LOCKE, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 15, 1988.

Order on Motion to Supplement and Petition to Rehear Feb. 3, 1989.

Permission to Appeal Denied by Supreme Court May 8, 1989.

Roger Reid Street, Jr., Franklin, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Linda Ann Hammond, Asst. Atty. Gen., Nashville, Joseph D. Baugh, Dist. Atty. Gen., Maurine C. Hatchett, David Puckett, Assistant District Attys., Franklin, for appellee.

## OPINION

JONES, Judge.

The defendant, Marshall Howard Locke, Jr., was convicted of the offenses of burglary first degree and aggravated rape by a jury of his peers. The trial court found that these offenses constituted especially aggravated offenses within the meaning of T.C.A. § 40-35-107(3)(C) (Supp.1988) and imposed the following Range II sentences: (a) a term of twelve (12) years in the Department of Correction for the offense of burglary first degree, and (b) a term of fifty (50) years in the Department of Correction for the offense of aggravated rape. The sentences were ordered to be served consecutively.

The defendant appealed as of right to this Court after the trial court denied his motion for a new trial. Tenn.R.App.P. 3(b).

## ISSUES PRESENTED FOR REVIEW

The defendant has presented four issues for our review. He contends that the evidence contained in the record is insufficient to support a finding by a rational trier of fact that he committed the offense of aggravated rape. He also contends that the assistant district attorney general violated the trial court's order granting his motion *in limine*, the photographic lineup conducted by law enforcement officers violated his federal and state constitutional rights, and the trial court committed error of prejudicial dimensions when he charged the jury regarding causation of the injuries sustained by the victim.

## SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence contained in the record is insufficient, as a matter of law, to support his conviction for aggravated rape. While the defendant does not contest that he raped the victim, he vigorously argues that the State of Tennessee failed to establish he caused personal injury to the victim within the meaning of T.C.A. § 39-2-603(a)(2) (Supp.1988).

During the early morning hours of May 21, 1987, the victim was awakened when she felt someone climbing into her bed.

The victim immediately noticed the outline of a large man removing his shirt as he moved toward her. When the man, later identified as the defendant, realized the victim was awake, he "pounced" upon her. He positioned one leg on each side of the victim, placed his hand over her mouth to prevent her from screaming, and grabbed her by the hair for the purpose of holding her head in a downward position. The defendant then removed the remainder of his clothing.

The victim attempted to push the defendant away from her, but she was unable to do so because of his size. As she fought and wrestled with the defendant, the defendant sexually penetrated the victim on two or three occasions.

The defendant never talked to the victim during the entire episode. However, according to the victim, the defendant constantly growled like an animal.

Once the defendant consummated the rape, he climbed out of the bed and began dressing himself at a leisurely pace. The victim, apparently feeling extremely angry, climbed out of the bed, approached the defendant, and began hitting him as she pushed him towards the door of the apartment. The defendant shoved her aside on a couple of occasions. The victim was ultimately successful in removing the defendant from the apartment.

The victim did not know how the defendant had gained entry into her second floor apartment. The lone door to the apartment was locked from the inside, and the door had to be opened to permit the defendant to leave through the door. The victim testified that all of the windows were locked when she went to bed earlier that evening. The investigating officers later discovered that a kitchen window was open. It was apparent that this was the means by which the defendant had obtained entry into the apartment.

After the defendant was removed from the apartment, the victim went to a window in another bedroom so that she could observe the defendant as he left the premises. The defendant was standing on the deck outside the door leading to her apartment, tucking his shirttail into his pants. The victim began screaming—louder than she had previously screamed. The defendant, upon hearing the scream, took a full can of beer and threw the can at the window where the victim was standing. The beer can broke a small window pane, but it did not enter the bedroom. The can became stuck within the small pane. The defendant immediately "jumped over" the deck railing and made a concerted effort to open the window where the victim had been standing.

The victim, thinking the defendant was preparing to reenter the apartment,[1] backed away from the window, and went to her bedroom. She put on a pair of bluejeans, grabbed a T-shirt, exited the room through a window, and stepped on to a ledge from which she jumped. She placed the T-shirt over the top of her body after reaching the ground. While the victim landed on her feet, she seriously injured herself.

Although it was difficult for the victim to walk after the fall, she managed to reach a fire department facility a short distance away. The police were called and responded immediately.

The victim accompanied the police to the back yard of her apartment complex. As two police officers climbed the stairs to the victim's second story apartment, they heard what sounded like a car door being slammed shut. The officers directed a third officer, who was left with the victim, to an abandoned vehicle situated in the back yard of the apartments. The officer shined his flashlight in the direction of the vehicle and saw an individual matching the description given by the victim. The officer ordered the man to halt. Instead, the man began running, and the officers gave chase. After a lengthy chase, the defen-

1. There is no evidence that the defendant reentered the victim's apartment. The victim testified: "I didn't know if he was in it or not, I had no idea." However, she thought that the defen-dant "was coming back after her" and this is the reason she jumped from the ledge outside her bedroom apartment.

dant was apprehended by a police dog when he refused to surrender to the officers.

The defendant was taken to the local hospital for treatment of the dog bite wounds. He refused to permit anyone to treat him. The defendant was then taken to the Williamson County Jail where he was confined.

The police officers took the victim to the hospital. As she laid on a bed in the emergency room, she heard the same growling sound that her attacker had made when he raped her. The record reveals a police officer had convinced the defendant to return to the hospital for treatment of the dog bite wounds, and he was present in the emergency room while the victim was being treated for the injuries she had sustained.

The victim was later admitted to the hospital due to the nature of her injuries. While hospitalized, a police officer brought a photographic array, and asked the victim if she recognized any of the men depicted in the photographs. When she looked at the fourth of the five pictures presented to her, she immediately identified the picture of the defendant as the person who had raped her. She also made a courtroom identification of the defendant as the person who had raped her. She testified that she was "positive, [and there was] no doubt" in her mind that the defendant was the person who attacked and raped her during the early morning hours of May 21, 1987. In addition, the victim identified the T-shirt worn by the defendant.

A search warrant was obtained for the removal of fluids from the defendant's body. The defendant was taken to the hospital, where the fluids were removed. A serologist testified that the blood type of the defendant matched the blood type of the fluids found on the sheets removed from the defendant's bed and the crotch of the bluejeans she was wearing after she had been raped.

The defendant denied that he entered the victim's apartment and raped her. He told a police officer that he was visiting a friend who resided in an apartment approximately two blocks away. When questioned why he ran from the police, the defendant stated: "I believe all cops are crooked son-of-a-bitches [sic], I always run from the cops."

▇ When the victim landed on the ground, after jumping from the second story ledge, she heard her back "pop." X-rays taken at the hospital revealed that a vertebrae in the lumbar portion of the victim's spine had been crushed; and this injury was consistent with her jumping from the second story ledge. She also injured her large toe when her foot struck a small shrub as she landed on the ground. The victim also had a two and one-half inch scratch on her neck. An examining doctor described the scratch as being "superficial," one which did not require medical attention. The scratch was described as "raw", and caused a "burning sensation," but was not deep enough to cause bleeding.

While the victim could not explain the antecedence of the scratch, she was quite sure that the scratch was not sustained when she jumped from the ledge. However, she admitted that the scratch could have been sustained as she crawled to the fire station. The record reflects that the defendant placed his head on her neck. The face and neck of the defendant contained "stubble," but not long enough to be a beard. Also, the defendant had placed his hands on the victim's neck where the scratch was located. The defendant used the victim's neck on more than one occasion to pin her against the bed during the course of the rape.

The Sexual Offense Law of 1979 defines the term "personal injury" as "bodily injury or serious bodily injury as defined in § 39–2–101." T.C.A. § 39–2–602 (Supp. 1988). The phrase "bodily injury" as defined in T.C.A. § 39–2–101(a)(1) (Supp.1988) includes "a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness or impairment of the function of a bodily member, organ, or mental faculty." This statute defines the phrase "serious bodily injury" as "bodily injury which involves a substantial risk of death, unconsciousness; extreme physical pain; protracted and obvious disfigurement; or protracted loss or

impairment of the function of a bodily member or organ." T.C.A. § 39–2–101(a)(2) (Supp.1988).

The scratch sustained by the victim to her neck constituted a "bodily injury" within the meaning of the Act.

■ Whether the serious, debilitating injuries sustained by the victim to her spine and large toe can be said to have "accompanied" the unlawful sexual penetration of the victim is a question of considerable complexity. This issue turns upon the meaning of the term "accompanied" as used in section (a) of the applicable statute. T.C.A. § 39–2–603(a) (Supp.1988).

The word "accompany" encompasses acts or circumstances which occur before, during and after the consummation of the unlawful sexual penetration. In *Balentine's Law Dictionary*, (3rd ed. 1979), it is said the word "accompany," as used in a statute, does not necessarily mean "simultaneous," but may mean "in relation to, connected with," or "to follow." *See Tucker v. Kerner*, 186 F.2d 79, 82 (7th Cir.1950). *Black's Law Dictionary*, (5th ed. 1979), referring to Webster's Dictionary, defines the word "accompany" as "[t]o occur in association with." *See United States v. Lee*, 131 F.2d 464, 466 (7th Cir.1942).

The phrase "accompanied by one of the following circumstances," as used in T.C.A. § 39–2–603(a) (Supp.1988), does not mean, as the defendant contends, that the requisite "personal injury" must be caused or inflicted for the purpose of making the victim submit to the unlawful sexual penetration or while the accused unlawfully sexually penetrates the victim. If this narrow construction was intended by the Tennessee General Assembly, the language used in T.C.A. § 39–2–603(a)(1), namely, "force or coercion is used to *accomplish* the act" [emphasis added], would have no meaning and constitute mere surplusage. We are of the opinion that the Legislature had a definitive purpose for using the phrase "accompanied by one of the following circumstances," and the phrase was intended to encompass acts committed in association with the unlawful sexual penetration, whether the acts occur before,

during or after the actual sexual penetration unless otherwise limited by the Act.

■ In the case *sub judice* it is obvious the offense commenced when the defendant entered the victim's apartment and climbed into her bed for the purpose of sexually penetrating her. However, the more difficult question, the basic issue in this case, is whether the defendant's attempt to reenter the apartment through the door before the victim was able to close and lock it, the throwing of the beer can at the window from which the victim was watching the defendant, and his vigorous effort to open that particular window as well as the injuries sustained by the victim when she jumped from the ledge "accompanied" the rape of the victim. We are of the opinion these facts presented a question for the jury; and the jury resolved this question against the defendant.

There are sufficient facts contained in the record from which a rational trier of fact can conclude beyond a reasonable doubt that the defendant unlawfully sexually penetrated the victim, and the injuries sustained by the victim in her effort to escape from the wrath of the defendant by jumping from the second floor ledge constituted a "bodily injury" or "serious bodily injury," the elements of aggravated rape as charged in the indictment. *See* Tenn.R. App. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The defendant did not challenge the sufficiency of the burglary first degree conviction.

This issue is without merit.

## VIOLATION OF MOTION IN LIMINE

■ The defendant filed a pretrial motion *in limine* seeking the entry of an order "instructing the District Attorney General, his Assistant, and the witnesses for the prosecution not to mention, allude or refer to any prior conviction or bad acts of the Defendant until such time as a hearing pursuant to *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976)" could be conduct-

ed outside the presence of the jury. The trial court granted the motion.

During the course of opening statement, an assistant district attorney general stated: "I anticipate that the evidence will show that the defendant stated that the reason he ran from the police was because they are all crooked SOB's." Defense counsel interposed a contemporaneous objection and a motion for a mistrial on the ground the statement made by the assistant district attorney general violated the trial court's order granting his motion *in limine* because the statement indicated that the defendant had previous involvement with law enforcement officials. The assistant district attorney general explained that the defendant had made this statement, the statement was furnished to the defendant in response to the defendant's request for discovery, a fact verified by the record, and the defendant did not move to suppress the statement. The trial court denied the motion for mistrial.

During the course of the trial, a law enforcement officer testified that he asked the defendant why he ran from the police officers on the date in question. According to the officer, the defendant responded by stating: "I believe all cops are crooked son-of-a-bitches [sic], I always run from the cops."

The trial court did not abuse its discretion in denying the defendant's motion for a mistrial. Contrary to the defendant's contention, the statement made by the assistant district attorney general did not violate the trial court's order granting the defendant's motion *in limine*. As indicated, the assistant district attorney general alluded to a statement made by the defendant during the investigation of the crimes set forth in the presentment; and the record establishes the defendant made such a statement in response to a question regarding his flight.

■ We parenthetically note that the defendant has failed to cite authority in support of this issue. Consequently, this issue has been waived. Tenn.R.App.P. 27(a)(7); *State v. Chapman*, 724 S.W.2d 378, 380 (Tenn.Crim.App.1986); *State v. Dakin*, 614 S.W.2d 812, 814 (Tenn.Crim.App.1980).

This issue is without merit.

## SUPPRESSION OF IDENTIFICATION TESTIMONY

The defendant filed a pre-trial motion to suppress the testimony of the victim "concerning a possible identification of the Defendant." The motion alleged that (a) the out-of-court identification procedure violated the defendant's state and federal constitutional right to counsel, and (b) the identification procedure was so suggestive as to give rise to a substantial likelihood of an irreparable misidentification of the defendant. The motion does not allege the nature of the identification procedure, namely, whether the identification was made following a lineup, showup or photographic array, whether there was state action involved in the identification process, or the facts giving rise to the legal grounds stated in the motion. In summary, the motion of the defendant did not comport with Rule 47, Tenn.R.Crim.P.

A search of the record transmitted to this court reveals that the transcript of the suppression hearing has not been included in the record. Furthermore, what was formerly called the "technical record" does not reveal that such a hearing was conducted. Nor does it contain an order of the trial court indicating the motion was brought to the attention of the trial court prior to trial and the trial court ruled upon the merits of the motion prior to trial.

Before voir dire proceedings were commenced, a conference was held in chambers regarding certain motions that the defendant had filed prior to trial. The court addressed motions concerning the range of punishment, sequestering the jury, a motion *in limine* predicated upon *Morgan*, and discovery of scientific evidence which had not been furnished to the defendant until four days before the trial was to commence. The motion to suppress the identification testimony of the victim was not discussed.

■ When the record transmitted to this Court does not reveal that a pre-trial motion was brought to the attention of the trial court prior to trial so that the trial court could rule upon the motion, the defendant waives the issue. *State v. Burtis,* 664 S.W.2d 305, 310 (Tenn.Crim.App.1983). *See State v. Burton,* 751 S.W.2d 440, 445 (Tenn.Crim.App.1988).

■ When the record is incomplete, and does not contain the proceedings relevant to an issue, this Court is precluded from considering the issue, *State v. Hopper,* 695 S.W.2d 530, 537 (Tenn.Crim.App.1985); *State v. Griffith,* 649 S.W.2d 9, 10 (Tenn. Crim.App.1982); *State v. Morton,* 639 S.W.2d 666, 668 (Tenn.Crim.App.1982); *State v. Hoosier,* 631 S.W.2d 474, 476 (Tenn.Crim.App.1982), and this Court must conclusively presume that the ruling of the trial court was correct. *State v. Cooper,* 736 S.W.2d 125, 131 (Tenn.Crim.App.1987); *State v. Taylor,* 669 S.W.2d 694, 699 (Tenn. Crim.App.1983); *State v. Baron,* 659 S.W.2d 811, 815 (Tenn.Crim.App.1983); *State v. Jones,* 623 S.W.2d 129, 131 (Tenn. Crim.App.1981).

This issue is without merit.

## INSTRUCTION ON CAUSATION

As heretofore indicated, a serious issue arose as to whether the defendant was guilty of aggravated rape or rape. The State of Tennessee contended that the fractured vertebrae and injured toe, which were sustained by the victim when she jumped from the ledge outside her bedroom window, constituted a "personal injury" within the meaning of T.C.A. § 39–2–603(a)(2) (Supp.1988). The defendant contended that the injuries sustained by the victim occurred after the defendant had sexually penetrated the victim and left the apartment. Thus, the defendant contended the State failed to establish that the defendant caused the injuries within the meaning of T.C.A. § 39–2–603 (Supp.1988).

When discussing the charge to be given the jury at the conclusion of the trial, the trial court advised counsel that he intended to charge the jury on the issue of causation of the injuries sustained by the victim when she jumped from the ledge. Prior to the trial court's charging the jury, defense counsel objected to the giving of such an instruction. The trial court overruled the objection. Defense counsel did not submit a special request; and no objection was made to the language contained in the instruction.

The trial court instructed the jury in the following language regarding the offense of aggravated rape:

beyond a reasonable doubt the existence of the following elements:

(1) That the defendant had sexual penetration of the alleged victim;

(2) That force or coercion was used to accomplish the act; and

(3) That as a circumstance accompanying the Act of rape, the defendant caused bodily injury to the alleged victim.

\* \* \* \* \* \*

"Bodily injury" includes a cut, abrasion, bruise, physical pain or impairment of the function of a bodily member or organ.

In connection with the third element of Aggravated Rape you are instructed that the defendant "caused" bodily injury only if the rape was a cause which, in natural and continuous sequence, produced the injury and without which the injury would not have occurred. The fact that the victim's own conduct contributed as a cause to the injury does not eliminate the rape as a cause if the causative force of the rape was still operative at the moment of injury.

■ In criminal cases it is the duty and obligation of a trial judge, without request, to instruct the jury as to the law applicable to the evidence as well as any issue which the jury must ultimately decide. *Poe v. State,* 212 Tenn. 413, 416, 370 S.W.2d 488, 489 (1963). *See State v. Harbison,* 704 S.W.2d 314, 319 (Tenn.1986); *State v. Martin,* 702 S.W.2d 560, 574 (Tenn.1985); *State v. Thompson,* 519 S.W.2d 789, 792 (Tenn. 1975); *State v. Elliott,* 703 S.W.2d 171, 179 (Tenn.Crim.App.1985). The trial judge is said to be "the proper source" from which the jury is to receive the law, and serves as

a witness to the law applicable to the case. *State ex rel. Myers v. Brown*, 209 Tenn. 141, 148–149, 351 S.W.2d 385, 388 (1961); *Ford v. State*, 101 Tenn. 454, 458, 47 S.W. 703, 705 (1898).

Once the trial court has charged the jury as to the law governing the case, it is the duty of the jury to apply the law, as charged, to the facts introduced into evidence. *Ford v. State*, supra. As our Supreme Court said in *Ford:*

> It is the duty of the court to direct the jury what the law is, and it is the duty of the jury to apply it, under the direction of the court, so far as he has directed, to the facts in evidence. They must treat it as applicable to the facts, and apply it as they determine the facts to be. The court is a witness to them what the law is, and the jury should adjudge it to be as given them.…

101 Tenn. at 458, 47 S.W. at 704.

■ In the case *sub judice* the trial court properly charged the jury regarding the issue of causation of the injuries sustained by the victim when she jumped from the ledge. As a practical matter, the issue of whether the defendant should be found guilty of aggravated rape or rape was the most important, if not the only, issue of significance to the defendant. Moreover, the instruction given by the trial judge was a correct statement of the law regarding causation—whether the injuries "accompanied" the unlawful sexual penetration within the meaning of T.C.A. § 39–2–603(a)(2) (Supp.1988).

In his argument regarding this issue, the defendant states:

> In *State v. Compton*, 642 S.W.2d 745 (Tenn.Crim.App.1982), it is stated that the law presumes that the jury complied with the Court's instructions. When the causative charge is combined with the presumption in *Compton*, supra, the jury was left with no alternative but to convict the defendant of aggravated rape. In cases previously cited, *Thomas*, supra, and *Prince*, supra, the conviction of aggravated rape only occurred when the defendants actually harmed the victim or were in close proximity to the victim. In

the presence case the Defendant was not even in the apartment at the time the victim jumped from the second story window.

This Court doesn't understand the logic of the defendant's argument regarding the presumption created by *State v. Compton*, supra. However, it is obvious that the defendant's reliance upon *Compton* is misplaced. This Court did not address the issue of jury instructions in *Compton*. The statement that the "law presumes that the jury complied with the court's instructions" [642 S.W.2d at 746] was made in connection with a curative instruction the trial court gave regarding certain improper statements made and questions asked by the district attorney general during the course of the trial proceedings. The applicable law in this jurisdiction is set forth in *Ford v. State*, supra.

The defendant's reliance upon *State v. Thomas*, 635 S.W.2d 114 (Tenn.1982), is misplaced, and the unreported opinion of this Court in *State v. Prince* is distinguishable upon the facts.

The argument advanced by the defendant does not take issue with the content of the instruction or contend that it is not a correct statement of law. The only argument advanced is that the instruction should have not have been given in any form.

This issue is without merit.

The judgment of the trial court is affirmed.

SCOTT and REID, JJ., concur.

## ORDER ON MOTION TO SUPPLEMENT AND PETITION TO REHEAR

The appellant, Marshall Howard Locke, Jr., has filed a motion to supplement the record in this cause pursuant to Rule 24(e), Tenn.R.App.P., and a petition to rehear pursuant to Rule 39, Tenn.R.App.P. The appellant seeks to supplement the record with respect to a hearing on the appellant's motion to suppress identification testimony. In his petition to rehear the appellant contends that this Court's opinion (a) overlooks

or misapprehends a material fact or proposition of law and (b) relies upon matters of fact or law upon which the parties have not been heard and are open to reasonable dispute.

The appellant candidly states that the rehearing is sought as to one issue, namely, the propriety of the trial court's decision denying his motion to suppress evidence. Of course, our consideration of this issue is contingent upon our granting his motion to supplement the record. As noted in our opinion, the record was insufficient for us to reach the merits of this issue.

The defendant's belated effort to supplement the record in this cause comes too late. *State v. Roberts*, 755 S.W.2d 833, 837–838 (Tenn.Crim.App.1988). Furthermore, the supplementation of the record does not constitute a meritorious ground for a rehearing pursuant to Rule 39(a), Tenn.R.App.P. As the late Mr. Justice Henry said in *Dearborne v. State*, 575 S.W.2d 259, 264 (Tenn.1978): "We decide cases and controversies on the basis of the record as presented to us for our consideration, and not as they might, or should, have been presented."

The appellant's motion to supplement the record and petition to rehear are both respectfully denied.