# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 15, 2001

## STATE OF TENNESSEE v. JON ROBERT GOODALE

**Appeal from the Criminal Court for Davidson County**
**No. 98-C-2298     Cheryl Blackburn, Judge**

---

**No. M2000-02140-CCA-R3-CD - Filed September 14, 2001**

---

The Defendant, Jon Goodale, was convicted of first degree premeditated murder, felony murder, and especially aggravated robbery in the Criminal Court of Davidson County. The first conviction was merged into the felony murder conviction and the Defendant was sentenced to life. The trial court then conducted a sentencing hearing and imposed a twenty-five year sentence for the especially aggravated robbery to be served consecutive to the life sentence. In his appeal as of right pursuant to Rule 3(b) of the Tennessee Rules of Appellate Procedure, the Defendant argues that (1) the evidence presented at trial was insufficient to support his convictions, (2) the trial court erred in failing to instruct the jury concerning accessory after the fact as a lesser-included offense to all charges, and (3) the sentence imposed by the trial court is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Jeffrey A. DeVasher, Assistant Public Defender, Nashville, Tennessee, for the appellant, Jon R. Goodale.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 6, 1998, Wendy Cook returned from work around three o'clock p.m. to the home she shared with her fiancé Ricky Hughes, the Defendant, and Chris Goodale, the Defendant's brother. Ms. Cook showered and changed and was then hurried from the house by Hughes who

informed her that "something bad was going to happen" and she needed to leave. When Ms. Cook returned later that evening, she observed a dark blue car in the driveway and saw Hughes, the Defendant, and the Defendant's brother cleaning the living room, the kitchen, and the couch with bleach. She also observed a clean, disassembled box-cutter in the sink and blood stains on the carpet, the couch, and the rug. Ms. Cook then left the house to pick up her brother. When she returned, the blue car was gone, and she observed Hughes sell a bag of marijuana to her brother, though she had never known her fiancé to use or sell marijuana in the past. Ms. Cook subsequently found the title to the blue car in the house. Ms. Cook then realized the blue car belonged to the victim, Frederick Joseph Hempel.

The victim was reported missing to the Metropolitan Nashville Police Department by his father on May 8, 1998 after disappearing on the afternoon of May 6. The last entry on the victim's caller ID before his afternoon disappearance was the phone number of the Defendant. The victim was known to sell and use marijuana. Also on May 8, the victim's blue car was found abandoned in a parking lot near the Defendant's home.

Based on the information provided them by Ms. Cook, investigators obtained and executed a search warrant for the Defendant's residence on May 11, 1998. Officers observed red stains on the bottom of the refrigerator, beneath the dining room table, on a wicker rocking chair, and on the blinds in the dining area. After spraying Luminal in the residence, blood stains were observed in the kitchen, the living room, on the washing machine, and on the living room sofa.

The Defendant and Hughes voluntarily accompanied the police to police headquarters for questioning. During the first interviews, both men denied any knowledge of the victim's disappearance. The Defendant and Hughes were then left together as officers discussed the initial interviews. During subsequent interviews, both the Defendant and Hughes stated that three black males arrived at their residence on May 6, accompanied by the victim, and killed the victim in the Defendant's home. The Defendant remained true to this statement until Hughes confessed to the murder of the victim during a third interview with police. Hughes then told police where to find the victim's body.

After Hughes's confession, the Defendant claimed that Hughes killed the victim while the Defendant watched. The Defendant also claimed that his only involvement was assisting Hughes in cleaning the residence and disposing of the body. Hughes later recanted his confession and testified at his own trial that the Defendant killed the victim.

The evidence introduced at trial demonstrated that on May 6, the day of the murder, the Defendant called the victim and asked him to deliver some marijuana to the Defendant's residence. Sometime after the victim arrived, one of the men, either the Defendant or Hughes, began to strike the victim in the head with a metal baseball bat. The victim tried to protect himself and eventually began emptying his pockets onto the floor in an attempt to dissuade his attackers. The victim fled from room to room until he ultimately lay defenseless on the kitchen floor. Then, one of the men retrieved a box cutter and cut a two-inch ring around and into the victim's neck. The Defendant and

Hughes then wrapped the body of the victim in trash bags and a blanket and concealed it under trash in a nearby wooded area. The two men returned to their apartment and began cleaning. The Defendant testified that he received $90 of the money taken from the victim.

Police found the body at the foot of an embankment on Trail Hollow Lane, partially wrapped in two trash bags. An autopsy revealed that the victim died as a result of multiple sharp and blunt force injuries to the head, neck, torso, and upper extremities. The blunt force injuries were consistent with the kind of injuries that could be inflicted by a baseball bat.

## I. SUFFICIENCY OF THE EVIDENCE

The Defendant argues on appeal that the evidence presented at trial was insufficient to convict him of first degree murder and especially aggravated robbery beyond a reasonable doubt. The Defendant contends that he was convicted under a criminal responsibility theory pursuant to Tennessee Code Annotated section 39-11-402 (2), which provides that a person is responsible for the criminal act of another if:

> (2) Acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense. . . .

Tenn. Code Ann. § 39-11-402 (2).[1] Under this theory, the Defendant asserts that there is not sufficient evidence to prove beyond a reasonable doubt that he shared the necessary intent to murder or rob the victim with his co-defendant Hughes, and, at most, he is guilty only of facilitation of felony murder and facilitation of especially aggravated robbery pursuant to Tennessee Code Annotated section 39-11-403. We disagree and find sufficient evidence within the record to support the Defendant's convictions as a principal, as well as under a theory of criminal responsibility.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn

---

[1] Although the trial judge included Tennessee Code Annotated § 39-11-402 (2) in his charge to the jury, there is no indication in the record that the jury actually convicted the Defendant under a criminal responsibility theory.

therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Tennessee's first degree murder statute defines first degree murder, in pertinent part, as follows:
(1) A premeditated and intentional killing of another;
(2) A killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping , aggravated child abuse or aircraft piracy[.]

Tenn. Code Ann. § 39-13-202(a). The statute further provides that "no culpable mental state is required for conviction [of felony murder] except the intent to commit the enumerated offenses or acts." Id. § 39-13-202(b).

Especially aggravated robbery is defined as the "intentional or knowing theft of property from the person of another by violence or putting the person in fear" where a deadly weapon is used and the "victim suffers serious bodily injury." Tenn .Code Ann. §§ 39-13-401, -403.

The Defendant was convicted of one count of premeditated murder and one count of felony murder. The premeditated murder conviction was merged into the felony murder conviction; therefore, we will address the sufficiency of the evidence for the conviction of felony murder. However, because no culpable mental state is necessary for a felony murder conviction except the intent to commit the underlying felony, an examination of the sufficiency of the evidence to support the Defendant's conviction of especially aggravated robbery is necessary.

The Defendant admitted calling the victim and asking him to bring marijuana to the Defendant's residence. The Defendant also admitted receiving $90 of the victim's money, which he later spent at a club. Colleen Butler Hudson testified that the Defendant told her that he hit the victim with the baseball bat and took his money because the Defendant was "broke and he needed money." Additionally, Hughes told police that he and the Defendant had previously discussed robbing the victim. The Defendant also admitted having "talked about robbing somebody before. . . ."

While the evidence may not be overwhelming, the testimony of the Defendant, Hughes, and Ms. Hudson provide sufficient evidence for a jury to find that the Defendant committed especially aggravated robbery. This Court will not re-weigh the evidence or re-evaluate the credibility of

witnesses.  See Morris, 24 S.W.3d at 795; Pappas, 754 S.W.2d at 623.  Accordingly, we find that the evidence supports the Defendant's conviction for especially aggravated robbery.

Having found that the evidence is sufficient to support the Defendant's conviction for the underlying felony of especially aggravated robbery, we also find that the evidence sufficiently supports his conviction for felony murder.  It is undisputed that the victim died as a result of a killing that was committed during the perpetration of a robbery.  At trial, the Defendant simply maintained that he did not kill the victim.  The jury found the Defendant's version of the crime suspect and credited the testimony of Ms. Hudson and the proof presented by the State.  We will not disturb that judgment.  Accordingly we find sufficient evidence to support the Defendant's conviction for first degree murder.

## II.  LESSER INCLUDED OFFENSES

The Defendant also contends that the trial court erred in refusing to instruct the jury on the offense of accessory after the fact as a lesser-included offense to all counts charged in the indictment. The Defendant argued at trial that, in light of State v. Burns, 6 S.W.3d 453 (Tenn. 1999), the offense of accessory after the fact is a lesser-included offense of all crimes charged in the indictment.  We respectfully disagree.

A trial court is under the mandatory duty to instruct the jury on a lesser-included offense, even if such an instruction is not requested, when "any evidence exists that reasonable minds could accept as to the lesser-included offense" and when that evidence is "legally sufficient to support a conviction for the lesser-included offense."  Id. at 469.  See also Tenn. Code Ann. § 40-18-110 (a). In Burns, our supreme court adopted a three-part test for determining whether an offense is a lesser included offense.  See Burns, 6 S.W.3d at 466-67.  Under the Burns test, an offense is a lesser included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
> (1) a different mental state indicating a lesser kind of culpability; and/or
> (2) a less serious harm or risk of harm to the same person, property or public interest;
> or
> (c) it consists of
> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id.

Our criminal code provides that:
[a] person is an accessory after the fact who, after the commission of a felony, with knowledge or reasonable ground to believe that the offender has committed the felony, and with intent to hinder the arrest, trial, conviction, or punishment of the offender . . . provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment.

Tenn. Code Ann. § 39-11-411(a)(2).

Clearly, accessory after the fact is not a lesser-included offense to the three charges in this case under the (a) portion of the Burns test because the statutory elements of accessory after the fact are not included in the statutory elements of first degree murder or especially aggravated robbery. Tennessee Code Annotated section 39-11-411 (a)(2) requires that a defendant intend to hinder some form of prosecution of the offender and provide aid to the offender in furtherance of that intent. It is also clear that accessory after the fact does not comply with the (c) portion of the Burns analysis because it is not solicitation, facilitation, or attempt.

A logical reading of the (b) portion of the Burns analysis also requires a finding that accessory after the fact is not a lesser-included offense to first degree murder or especially aggravated robbery. In Tennessee, the offense of accessory after the fact has traditionally been viewed as a separate and distinct crime from the substantive offense and not a lesser-included offense. See State v. Hoosier, 631 S.W.2d 474 (Tenn.Crim.App. 1982). That view does not change after Burns. See State v. James E. (Junebug) Ligon, No. M1999-02461-CCA-R3-CD (Tenn.Crim.App. at Nashville, January 12, 2001) (holding that accessory after the fact is not a lesser included offense of aggravated burglary or theft).

A Burns analysis under part (b) (1) and (2) is inapplicable to the offenses of accessory after the fact. Part (b)(1) of the analysis requires a "different mental state indicating a lesser kind of culpability." Burns, 6 S.W.3d at 466-67. While an accessory after the fact is less culpable than the principal offender, it is the offense and not the mental state that distinguishes the two. For example, lesser-included offenses for first degree murder include second degree murder, manslaughter, and criminally negligent homicide because, while the mental state may change, the offending act is the same: someone was killed. Accessory after the fact is distinguishable because the offense is aiding a felonious offender in avoiding prosecution.

Similarly, part (b)(2) of the Burns analysis is inapplicable due to the distinct harms contemplated by the statutes. The first degree murder and especially aggravated robbery statutes are designed to protect the individual safety of people and property by providing severe punishment for offenders who violate the provisions of the statutes. However, the accessory after the fact provision does not protect individual citizens so much as the State's interest in prosecuting offenders. The "less serious harm or risk of harm" element in (b)(2) of Burns, is therefore, inapplicable, because the accessory after the fact statute protects a different victim from a different harm than the first degree murder and especially aggravated robbery statutes. Burns, 6 S.W.3d at 466-67.

-6-

However, even if the offense of accessory after the fact is a lesser-included offense to either first degree murder or especially aggravated robbery, the trial court's failure to charge the jury as to accessory after the fact is harmless beyond a reasonable doubt. In State v. Williams, 977 S.W.2d 101 (Tenn. 1998), the defendant was charged with first degree murder, and the jury was instructed on the lesser included-offense of second degree murder. Id. at 106. The supreme court reasoned that because the jury rejected the immediately lesser offense of second degree murder, it "necessarily rejected all other lesser offenses, including voluntary manslaughter," which was not charged by the trial court. Id. Therefore, the failure to instruct the jury on the offense of voluntary manslaughter was harmless error. Id. In the present case, the Defendant was charged in count one with first degree premeditated murder, and the jury was instructed on the lesser-included offenses of facilitation of first degree murder, second degree murder and facilitation of second degree murder. In count two, the Defendant was charged with first degree felony murder, and the jury was instructed on the lesser-included offenses of facilitation of first degree felony murder, second degree murder, and facilitation of second degree murder. In count three, the defendant was charged with especially aggravated robbery, and the jury was instructed on the lesser-included offenses of facilitation of especially aggravated robbery, aggravated robbery, facilitation of aggravated robbery, robbery, and facilitation of robbery. As in Williams, the jury in this case found the Defendant guilty of the highest offenses on each count, thereby rejecting any lesser-included offenses. Therefore, we conclude that, even if accessory after the fact is a lesser-included offense of first degree murder or especially aggravated robbery, the failure to charge accessory after the fact in this case would be harmless error beyond a reasonable doubt.

### III. SENTENCING

Finally, the Defendant challenges the imposition of his twenty-five year sentence as a Range I offender on the conviction for especially aggravated robbery, as well as the trial court's order that the sentence be served consecutive to the life sentence imposed on the first degree murder conviction. Specifically, the Defendant contends that the trial court improperly applied two enhancements factors and erroneously failed to apply one statutory mitigating factor.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875

S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

First, the trial court used the Defendant's "previous history of criminal convictions or criminal behavior" as an enhancement factor pursuant to Tennessee Code Annotated section 40-35-114 (1). The trial court based its finding of criminal behavior on the Defendant's admitted marijuana use for three years prior to his arrest. While we share the Defendant's concern that such an admission in a pre-sentence report, without further proof, can serve as an enhancing factor, it is clear that the Defendant's marijuana use does constitute "criminal behavior." See Tenn. Code Ann. §§ 39-17-415, -418. The admission in the pre-sentence report is also supported by the Defendant's admission at trial that he telephoned the victim requesting marijuana. Accordingly, we cannot conclude that the trial court erred in considering the defendant's history of "criminal behavior" as an enhancing factor.

Next, the trial judge found that the Defendant was a "leader in the commission of an offense involving two (2) or more criminal actors." See Tenn. Code Ann. § 40-35-114(2). The Defendant challenges the trial court's enhancement factor. However, our cases have established that enhancement for being a leader in the commission of an offense does not require that the defendant be the sole leader but only that he be "a" leader. See State v. Hicks, 868 S.W.2d 729, 731, (Tenn.Crim.App.1993). Both of two criminal actors may be "a leader in the commission of an offense." State v. Brenda Harris, No. 01C01-9101-CR-00247, 1991 WL 186850, (Tenn.Crim.App., Nashville, Sept. 24, 1991), perm. to appeal denied, (Tenn.1992). While these propositions may not always be true, the evidence here supports such a conclusion. It is clear from the Defendant's own admissions that he took the initiative to call the victim and lure him to the Defendant's residence. The Defendant also admitted disposing of the victim's body. Furthermore, witnesses testified that the Defendant told them that he struck the blows that killed the victim. Accordingly, we find no error in the trial court's application of this enhancement factor.

Furthermore, the record of the sentencing hearing indicates that the trial judge gave little weight to either of these two enhancement factors and relied most heavily on finding that the Defendant treated the victim with "exceptional cruelty." See Tenn. Code Ann. § 40-35-114(5). The trial court's extensive findings regarding this factor are supported by the record, and we find no error in the trial court's application of this factor.

The Defendant also contends that the trial court erred by failing to find that he "assisted the authorities in locating or recovering any property or person involved in the crime" as a mitigating

factor. See Tenn. Code Ann. § 40-35-113 (10). It is apparent from the record that the trial court did not err in refusing to apply this mitigating factor. From the beginning of the Defendant's involvement with police, he lied and mislead authorities as well as the victim's family. The story the Defendant gave the police changed at least three times. Only after Hughes confessed and told police where to locate the victim's body did the Defendant offer to help the police locate the murder weapons. The trial court specifically found that the Defendant "did everything he could to prevent [the authorities] from finding the body at a time when the police were seriously looking." The record supports the trial court's conclusion and the trial court therefore did not err in refusing to apply this mitigating factor.

Finally, the defendant alleges that his especially aggravated robbery sentence should not run consecutively to his life sentence for first degree murder. We disagree. Consecutive sentencing is governed by Tennessee Code Annotated section 40-35-115. A trial court may order sentences to run consecutively if it finds that one or more of the statutory criteria enumerated therein exists by a preponderance of the evidence. See State v. Black, 924 S.W.2d 912, 917 (Tenn.Crim.App.1995). At the close of the sentencing hearing, the trial court stated that its basis for the imposition of consecutive sentences was that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. See Tenn. Code Ann. § 40-35-115 (b)(4).

In this case we agree that the Defendant's conduct supported consecutive sentencing under section 40-35-115(b)(4). Specifically the trial court stated that "the circumstances surrounding Mr. Hempel's death, the manner in which he was killed, and the cover-up, the fact of the attempt to mislead the police" evidenced the Defendant's disregard for human life. In addition, the trial court properly determined that the aggregate term of the Defendant's sentences reasonably related to the severity of the offenses committed and are necessary to protect the public from further serious criminal conduct by the Defendant. See State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995); State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999). We find that the trial court did not err in ordering the Defendant's sentences to be served consecutively.

## CONCLUSION

For the reasons set forth above, we find that (1) there is sufficient evidence to support the Defendant's convictions, (2) the trial court did not err in failing to instruct the jury concerning accessory after the fact as a lesser-included offense to all charges, and (3) the trial court imposed a proper sentence. Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE