# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 18, 2001

## STATE OF TENNESSEE v. JOEL M. PUENTES

### Appeal from the Criminal Court for Davidson County
### No. 2000-A-364     J. Randall Wyatt, Jr., Judge

### No. M2001-01115-CCA-R3-CD  - Filed February 1, 2002

The defendant, Joel M. Puentes, appeals his conviction by a jury in the Davidson County Criminal Court for facilitating second degree murder, a Class B felony, for which he received a nine-year sentence. He contends that (1) the indictment is deficient in its allegations regarding homicide, (2) the proof is insufficient to convict him, and (3) the trial court should have instructed the jury regarding accessory after the fact as a lesser included offense to homicide. We conclude that no error exists and that the evidence is sufficient. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Ross E. Alderman, District Public Defender; Jeffrey A. DeVasher, Assistant Public Defender (on appeal); and Amy D. Harwell and Richard Tennent, Assistant Public Defenders (at trial), for the appellant, Joel M. Puentes.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Dan Hamm and Ana L. Escobar, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendant was convicted for facilitating the second degree murder of Jose Folgar Sanchez, who was shot in the parking lot of the Ivy Woods Apartments in Davidson County on the afternoon of September 20, 1997. Both the victim and the defendant resided in the apartment complex. The defendant's sufficiency argument is based upon his view of the eyewitnesses' testimony about the events. The proof established that the defendant and three others arrived in a car in the parking lot, went to the defendant's apartment, and returned five to ten minutes later. They entered the car, and the defendant was in the driver's seat when a shot was fired. The defendant then sped out of the parking lot.

At this point, we note that the standard by which we review the evidence is in the light most favorable to the prosecution, and if we conclude that any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt, the evidence is deemed sufficient to convict. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that the evidence favoring the state is accredited, and all testimonial conflicts are resolved in favor of the state's theory. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). We, therefore, will recount the evidence that is germane to our standard of review.

Three witnesses testified about what they saw and heard in the parking lot: Oscar and Jose Perez, the victim's cousins, and Carlos Quintinia, a good friend of the victim. Initially, we note that the witnesses testified through interpreters and that the trial court viewed the translations to be less than ideal. The record supports the trial court's view.

Oscar Perez testified that he lived in the Ivy Woods Apartments and had known the defendant for approximately two years. On September 20, 1997, shortly before 3:00 p.m., he and about five of his friends were standing by the dumpster in the parking lot. He saw the defendant in the defendant's small black car with three men. The car pulled into the parking lot and parked. The men in the car went to the defendant's apartment. In approximately ten minutes, the four men came back to the parking lot. Mr. Perez testified that one of them was carrying something. Mr. Perez said that the four got into the defendant's car and he heard someone say "come" or "come on." He said he then saw something come out of the window and heard a shot. He said that the defendant left right away. He said the victim was going toward the victim's truck when he got shot. Mr. Perez testified that he saw Carlos Quintinia and his cousin, Jose Perez, on balconies of the apartment complex when the shooting occurred.

Carlos Quintinia testified that he had lived in the same apartment complex as the victim, whom he had known for years. He also knew the defendant, who was a neighbor of his. He said that on the day and time in question, he was on the balcony of his first-floor apartment. He stated that he saw the defendant and three others arrive in the defendant's black car, go to the defendant's apartment for about five minutes, and come outside "with something covered" being carried by one of the three men. He said that the defendant and the three men entered the defendant's car when a shot was fired out of a window of the car. The record reflects that he placed the driver beside the shooter. He said that the defendant was driving and left the parking lot.

Jose Perez testified that he lived in the apartment complex and was the defendant's neighbor. He was on his balcony when he saw the defendant and three men get out of the car and go to the defendant's apartment. He said they came out about five minutes later and one person was covering something big that he was carrying. Mr. Perez testified that one person went toward a fence but then returned to the car. All four entered the car, with the defendant driving. Mr. Perez said that the person beside the defendant did the shooting. He said that before the shooting, the defendant "called them to come where he was," speaking in the direction of the victim. He said that after the shooting, the defendant left right away "smoking the tires."

# I.  SUFFICIENCY OF THE INDICTMENT

The defendant contends that the indictment upon which he was tried for first degree murder and ultimately convicted of facilitation of second degree murder did not allege any degree of homicide, only aggravated assault.  The state responds that the indictment sufficiently charged the defendant with first degree murder.

The indictment charges the defendant as follows:

> **JOEL M. PUENTES** on the **20th** day of **September**, **1997**, in Davidson County, Tennessee and before the finding of this indictment, intentionally and with premeditation did assault the person of **Jose F. Sanchez**, and said **Jose F. Sanchez** did therefore linger, languish and die on **November 7, 1997**, in violation of Tennessee Code  Annotated §39-13-202, and against the peace and dignity of the State of Tennessee.

The defendant focuses upon the allegation that he committed an assault upon the victim and argues that such an allegation does not state facts that constitute the offense of first degree murder as is required pursuant to Tenn. Code Ann. § 40-13-202.  He notes that the indictment refers to the first degree murder statute, but he argues that reference to a statute does not suffice when sufficient facts constituting the offense are not alleged in the indictment.  Given the recent evolution of case law regarding the sufficiency of indictments in Tennessee, we respectfully disagree with the defendant's contentions.

The defendant relies upon Tenn. Code Ann. § 40-13-202, which provides that an indictment:

> must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . .

In this respect, our supreme court has concluded that an indictment will be deemed valid so long as it provides sufficient information to enable the defendant to know the accusation to defend, to furnish the trial court an adequate basis for entry of a proper judgment, and to protect the defendant from double jeopardy.  See State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997).  It has also stated that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000).  To this end, "specific reference to a statute within the indictment may be sufficient to place the accused on notice of the charged offense." State v. Sledge, 15 S.W.3d 93, 95 (Tenn. 2000).

Although the allegations in the present indictment do not track the wording of the first degree murder statute, we believe that it sufficiently apprises the defendant of the charge of first degree murder. First degree murder is the unlawful "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). The indictment alleges that the defendant "intentionally and with premeditation did assault" the victim who "did therefore linger, languish and die" at a later date. From the defendant's perspective, we acknowledge that alleging that an assault was committed intentionally and with premeditation, taken by itself, does not allege that the killing was committed intentionally and with premeditation. However, we believe that essentially alleging that the assault caused the victim's death and referring to the first degree murder statute provided adequate notice to the defendant that he was charged with killing the victim intentionally and with premeditation. We conclude that the indictment sufficiently charges first degree murder.

## II. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to convict him of facilitation of second degree murder. He argues that there is no evidence in the record that the defendant knew that the gunman intended to shoot the victim nor any evidence that the defendant "knowingly furnished substantial assistance" to the gunman before the shooting, as is required for facilitation of a crime. He asserts that the record instead supports a finding that by driving the gunman away from the scene after the shooting, the defendant provided the gunman with a means of avoiding arrest, i.e., was guilty of being an accessory after the fact. See Tenn. Code Ann. § 39-11-411(a)(2).

Under Tenn. Code Ann § 39-11-403(a), facilitation of a felony occurs if a person, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Second degree murder is the unlawful "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1).

In the light most favorable to the state, the evidence reflects that the defendant and three associates arrived at the apartment complex, entered the defendant's apartment, and returned to the car with one of them carrying something that was covered from view. The victim and others were standing in the parking lot and when the defendant and his associates entered the defendant's car, the defendant called for the people standing in the lot to come over to him. Then, the front seat passenger shot through the car window and hit the victim. The defendant drove off hurriedly after the shooting. From these facts, the jury could rationally find beyond a reasonable doubt that the defendant called for the people in order to facilitate the shooting and drove away quickly in order to evade capture. We believe the facts could justify a finding that the defendant was criminally responsible for the shooting, not just for facilitating it. The evidence justifies the defendant's conviction for facilitation of second degree murder.

## III.  JURY INSTRUCTIONS

Finally, the defendant complains about the trial court's refusing to instruct the jury on the offense of accessory after the fact as a lesser included offense.  In response, the state correctly notes that this court has previously concluded that accessory after the fact is not a lesser included offense to the principal offense charged.

Traditionally, the offense of accessory after the fact has been deemed a separate and distinct crime from the substantive offense, not a lesser included offense.  See State v. Hoosier, 631 S.W.2d 474, 476 (Tenn. Crim. App. 1982).  In this respect, this court has reviewed the issue under the analysis dictated in State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999), and has concluded that the traditional view remains unchanged under Burns.  See State v. Jon Robert Goodale, No. M2000-02140-CCA-R3-CD, Davidson County (Tenn. Crim. App. Sept. 14, 2001); State v. James E. (Junebug) Ligon, No. M1999-02461-CCA-R3-CD, Cheatham County (Tenn. Crim. App. Jan. 12, 2001), app. granted and remanded on other grounds (Tenn. May 29, 2001).  The defendant argues that the concepts of facilitation of a felony and accessory after the fact are closely related, the primary difference being a factual one, based upon timing.  However, we view the difference to be telling–the timing of the conduct is material.  Moreover, our legislature has adopted comments that expressly note that facilitation is a lesser included offense of the crime charged.  See Tenn. Code Ann. § 39-11-403, Sentencing Commission Comments.  We see no reason to abandon the conclusions reached in Goodale and Ligon.  The trial court did not err in refusing to instruct the jury regarding accessory after the fact.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE