IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 12, 2005

## STATE OF TENNESSEE v. CAREY RAY FAUGHT

**Direct Appeal from the Criminal Court for Knox County**
**No. 78394     Richard Baumgartner, Judge**

---

### No. E2004-01705-CCA-R3-CD - August 5, 2005

---

Following a jury trial, Defendant, Carey Ray Faught, was found guilty of carjacking, a Class B felony. At the conclusion of the sentencing hearing, the trial court sentenced Defendant as a Range I, standard offender, to nine years. The trial court ordered Defendant's sentence for the current offense to be served consecutively to the sentence he was currently serving in case No. 71405. On appeal, Defendant argues (1) that the trial court erred in not granting his motion to suppress the victim's pre-trial identification; (2) that the evidence was insufficient to support his conviction for carjacking; (3) that the trial court erred in sentencing Defendant above the minimum of the range for a Range I, standard offender, convicted of a Class B felony; and (4) that the trial court erred in ordering Defendant to serve his sentence for the current offense consecutively to his sentence in case No. 71405. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Sam G. Smith, Jr., Knoxville, Tennessee, for the appellant, Carey Ray Faught.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Randall E. Nichols, District Attorney General; Ta Kisha M. Fitzgerald, Assistant District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

### I. Background

Hector Rocha Fernandez dropped his girlfriend off at her house between 11:30 p.m. and 12:00 a.m. on April 29, 2003. He drove down the street and turned left at the stop sign. About twenty feet from the stop sign, Mr. Fernandez saw a group of people. A man, whom Mr. Fernandez

described as tall and African-American, waved at Mr. Fernandez. Mr. Fernandez stopped his car, and Defendant got into the passenger seat. Defendant asked Mr. Fernandez, "What do you want?" Mr. Fernandez told Defendant that he did not want anything, and that he stopped because he thought someone needed a ride. Mr. Fernandez told Defendant to get out of the car, but Defendant did not move.

An arm came into the car through the driver's side window which was cracked open. Mr. Fernandez said that the man at the driver's side of the car was African-American. The man was holding a sharp object in his hand and stabbed Mr. Fernandez in the side and neck. Mr. Fernandez fell against Defendant and hit him with his elbow. Defendant grabbed the car keys and fled. Mr. Fernandez exited the car from the passenger side and fell to the ground. He was kicked several times in the stomach and ribs before he managed to run away.

Mr. Fernandez initially told the police that he was robbed by a group of African-American men, and then he said that the man who got into the passenger side of his car was a white man. Mr. Fernandez said that he gave a statement to the police about two weeks after the offense and at that time identified Defendant from a photo line-up as the man in his car.

On cross-examination, Mr. Fernandez said that he did not know how many people were in the group by the stop sign, and could not positively say that Defendant was a member of the group. Mr. Fernandez said that his car's side windows were tinted. Mr. Fernandez said that his encounter with Defendant lasted between one and three minutes, and he agreed that Defendant never showed him a weapon, touched him or threatened him. Mr. Fernandez could not identify Defendant as one of the men who kicked him after he fell out of his car.

Mr. Fernandez said that he had stopped on a steep hill. The car continued to roll slowly down the incline during the incident because the car's brakes were not functioning correctly. Mr. Fernandez admitted that he was watching the road periodically while Defendant was in the car. Mr. Fernandez said that none of his belongings were taken from the car, although the car was experiencing transmission difficulties after it was returned to Mr. Fernandez. Mr. Fernandez could not remember whether he was shown the photo line-up with Defendant's photograph before or after he gave his statement to the police. Mr. Fernandez said that he did not know any of the men involved in the carjacking.

Crystal Ferguson said that Defendant, Michael Smith and Travis Williams came over to her house on the night of the offense. After the men left, Ms. Ferguson found two keys which were later identified as the victim's car and house keys. Ms. Ferguson said that Mr. Smith is white.

Officer K. V. Anders with the Knoxville Police Department said that the victim did not provide any physical description of the suspects on the night of the offense. Officer Anders did not recall the victim suffering any injuries, and he did not receive any medical treatment at the scene. Officer Norman Rickman testified that he found the victim's car the morning after the offense a short distance from the scene of the crime.

Michael Smith testified that he and Travis Williams pled guilty to the lesser included offense of attempted carjacking. Mr. Smith said that he told the police that he stabbed the victim, and that Defendant pulled the victim out of the car. He said that two men named "Eric" and Dee Parker and two women were also present at the scene. Mr. Smith testified at trial that he did not have anything in his hand when he reached into Mr. Fernandez's car. Mr. Smith said that he did not know how Mr. Fernandez was injured. He also testified that Defendant did not pull the victim out of his car.

Investigator Joseph Huckleby with the Knoxville Police Department said that he talked to Mr. Smith, Mr. Williams and Defendant a few days after the offense. Investigator Huckleby said that he did not show Mr. Fernandez a photo line-up containing Mr. Smith's and Mr. Williams' photographs because the two men had already admitted to their involvement in the incident. Investigator Huckleby said that Defendant eventually told him who was part of the group that night, and who was and was not involved in the carjacking.

## II. Motion to Suppress

Defendant filed a pre-trial motion to suppress Mr. Fernandez's identification testimony. Defendant argued that although he is part white, part African-American, the other men depicted in the photo line-up shown to Mr. Fernandez were white men. Defendant contended that the photographs chosen for inclusion in the photo line-up were so suggestive as to violate his rights to due process.

At the suppression hearing, Mr. Fernandez admitted that he initially said that all of the men who accosted him were African-American because he was nervous. Later, he told the police that the man who got into his car was white. He identified Defendant immediately from the photo line-up, and described Defendant at the preliminary hearing as "white."

The trial court found that the photo line-up with Defendant's photograph was not overly suggestive and denied Defendant's motion to suppress. The trial court found that all six men depicted in the line-up were lightly complected and had facial hair, and that none of the men's hair style was particularly distinctive.

Defendant argues that the trial court erred in finding that the photo line-up shown to Mr. Fernandez was not overly suggestive. Although the police responded quickly to Mr. Fernandez's 911 call, Mr. Fernandez was unable to provide any physical description of his assailants other than the fact that one man was African-American and the other was white. Defendant points out that Travis Williams is an African-American and Mr. Smith is white, but Mr. Fernandez was never shown their photographs. In addition, Mr. Fernandez incorrectly identified Mr. Smith as an African-American at trial and in his statement to the police. Defendant insists that it is obvious from the photo line-up that he is the only man of mixed heritage.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon the reviewing court unless the evidence in the record preponderates against the trial court's

findings. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). However, the application of the law to the facts found by the trial court are questions of law that this Court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000) (citations omitted). "Absent a showing by the defendant that the evidence preponderates against the judgment of the trial court, [the reviewing court] must defer to the ruling of the trial court." *State v. Robinson*, 146 S.W.3d 469, 516 (Tenn. 2004) (citing *State v. Cribbs*, 967 S.W.2d 773, 795 (Tenn. 1998)).

A pre-trial identification process may be unlawful "if, under the totality of the circumstances, the procedure is unnecessarily suggestive." *Robinson*, 146 S.W.3d at 516 (citing *Stovall v. Denno*, 388 U.S. 293, 301-02, 87 S.Ct. 1967, 18 L. Ed. 2d 1199 (1967)). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L. Ed. 2d 401 (1972).

In *Biggers*, the United States Supreme Court established a two-part analysis to assess the validity of a pre-trial identification. *Id.*, at 198-200, 93 S.Ct. at 382. This standard has been adopted by our State's supreme court. *See Bennett v. State*, 530 S.W.2d 511, 512-15 (Tenn. 1975). First, the court must determine whether the viewing process was unduly suggestive. *Biggers*, 409 U.S. at 198, 93 S.Ct. at 382. A violation of due process has occurred when there is "'a very substantial likelihood of irreparable misidentification.'" *State v. Chapman*, 724 S.W.2d 378, 380 (Tenn. Crim. App. 1986)(quoting *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 971, 19 L. Ed. 2d 1247 (1968)).

Second, if the identification was unduly suggestive, the court must determine, under the totality of the circumstances, whether the identification is nevertheless "reliable enough to withstand a due process attack despite the suggestiveness of the pre-trial identification." *Robinson*, 146 S.W.3d at 516 (citations omitted). The factors which the court must consider are: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the time between the crime and the confrontation." *Id.*, at 517.

In the case *sub judice*, the trial court found that the photo line-up fairly included six individuals of similar skin tones and facial hair. Based upon our review of the photograph array, we conclude that the evidence does not preponderate against the trial court's findings. Although Defendant claims that he is of a different racial mixture than the other five men presented in the line-up, the photo line-up was not impermissibly suggestive. Even though Mr. Fernandez did not provide a physical description of his assailants on the night of the offense, he was in close proximity to Defendant for one to three minutes and immediately identified Defendant as the person in his car when shown the photo line-up. Defendant is not entitled to relief on this issue. *See Robinson*, 146 S.W.3d at 517. (The photo line-up was not impermissibly suggestive even though the defendant's complexion was "somewhat lighter than the complexions of the other persons in the array.")

## III. Sufficiency of the Evidence

Defendant argues that the evidence failed to establish that he took the victim's car by force or that he was criminally responsible for Mr. Smith's and Mr. Williams' actions.

Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Defendant was convicted of carjacking, which is defined as relevant here as "the intentional or knowing taking of a motor vehicle from the possession of another by use of . . . force." Tenn. Code Ann. § 39-13-404(a)(2). "'Force' means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purpose of [Title 39]. *Id.* § 39-11-106(12).

A person may be convicted of an offense if "he or she is criminally responsible for the perpetration of the offense." Tenn. Code Ann. § 39-11-401, Sentencing Commission Cmts. A person is criminally responsible if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." *Id*. § 39-11-402(2). Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense, . . . based upon the conduct of another." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999). To be criminally responsible for the acts of another, the defendant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994)(quoting *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). A defendant's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred. *See State v. Bell*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). The defendant need not have taken a physical part in the crime in order to be held criminally responsible. *See id.*

Mr. Smith testified that he, Defendant and Mr. Williams were standing on the sidewalk when Mr. Fernandez stopped his car. Mr. Smith said Defendant got into Mr. Fernandez's car while Mr. Smith reached inside the car through the driver's side window. Ms. Ferguson said that Defendant, Mr. Smith and Mr. Williams came over to her house on the night of the offense. After the three men left, Ms. Ferguson found the victim's car and house keys. Mr. Fernandez said that Defendant got into his car while another man attacked him through the driver's side window with a sharp object, stabbing him in the side and neck. Defendant grabbed Mr. Fernandez's keys and exited the car. Mr. Fernandez fell out of the car onto the ground where he was kicked repeatedly in the stomach and ribs before he escaped. The determination of whether force was used to steal Mr. Fernandez's car rested with the jury's assessment of the credibility of the witness. The jury obviously credited Mr. Fernandez's testimony that he was stabbed and kicked while his car was being taken.

Defendant argues that there was no evidence that he intended to deprive Mr. Fernandez of the ownership of his car. Mr. Fernandez's car was recovered the morning after the carjacking, and none of Mr. Fernandez's personal items that were in the car had been taken. A carjacking offense, however, does not require proof that the defendant took the vehicle with the intent to "deprive the owner of the property;" it only requires proof that the defendant took property "from the possession of another." *Compare* Tenn. Code Ann. §§ 39-14-103 and 39-13-401(a) *with* § 39-13-404(a).

We conclude that the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Defendant knowingly participated in the carjacking and was guilty of the offense under a theory of criminal responsibility. Defendant is not entitled to relief on this issue.

## IV. Sentencing Issues

The State relied on Defendant's pre-sentence report at the sentencing hearing. According to the pre-sentence report, Defendant was on probation when the carjacking offense occurred. Defendant was convicted of aggravated burglary, burglary and evading arrest on January 5, 2001 in case No. 71405. He was sentenced to concurrent terms of three years for the aggravated burglary conviction, two years for the burglary conviction, and eleven months, twenty-nine days for the evading arrest conviction, all of which was suspended and Defendant placed on probation. Defendant committed the current offense on April 29, 2003, and his probation was revoked on August 3, 2003.

Based on the facts surrounding the offense and the pre-sentence report, the trial court found as enhancement factors (1) that Defendant has a previous history of criminal convictions in addition to those necessary to establish the sentencing range; (2) that Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; and (3) that the offense was committed while Defendant was on probation. *See* Tenn. Code Ann. §§ 40-35-114(2), (9) and (14)(C). The trial court considered enhancement factor (9) and enhancement factor (14) as a single enhancement factor in determining the length of Defendant's sentence. The trial court found that no mitigating factors were present. Based on the presence of two enhancement factors and no mitigating factors, the trial court sentenced Defendant to nine years as a Range I,

standard offender.  The trial court ordered Defendant to serve his sentence for the carjacking offense consecutively to his prior sentence for aggravated burglary in case No. 71405 because he committed the carjacking offense while on probation.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct.  *Id.* § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).  "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls."  *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

As a Range I offender convicted of a Class B felony, Defendant is subject to a sentence of between eight and twelve years.  Tenn. Code Ann. § 40-35-112(a)(2).  In calculating the sentence for a Class B felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors.  *Id.* § 40-35-210(c).  If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. *Id.* 40-35-201(d).  If both enhancing and mitigating factors are present, the trial court must start at the presumptive minimum, enhance the sentence within the range as appropriate for the enhancing factors, and then reduce the sentence as appropriate for the mitigating factors.  Tenn. Code Ann. § 40-35-210(e).

Defendant concedes that the trial court properly considered his prior convictions as an enhancement factor in determining the length of his sentence.  Defendant argues on appeal, however, that the trial court's consideration of any other enhancement factor violates his Sixth Amendment right to a trial by jury as set forth in the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004).  Our Supreme Court, however, has recently concluded that Tennessee's sentencing scheme does not violate a defendant's Sixth Amendment rights as addressed in *Blakely*.  *State v. Edwin Gomez and Jonathan S. Londono,* ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *22 (Tenn. Apr. 15, 2005).  Defendant is not entitled to relief on his *Blakely* challenge.

Although Defendant does not challenge the trial court's application of enhancement factors (9) and (14)(C) outside of *Blakely*, we find that the trial court's consideration of enhancement factor (9) was improper.  A defendant's sentence may be enhanced if the defendant has shown a previous

unwillingness "to comply with the conditions of a sentence involving release in the community." *Id.* § 40-35-114(9). This Court, however, has previously concluded that current offenses may not be used to establish a violation of probation under this factor. *State v. Hayes*, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995). Nonetheless, a sentence may be properly enhanced if a felony offense is committed while the offender is on probation for a prior felony conviction. Tenn. Code Ann. § 40-35-114(14)(C). Based on the presence of two enhancement factors and no mitigating factor, we cannot conclude that the trial court erred in sentencing Defendant to nine years, or one year above the minimum presumptive sentence for a Range I standard offender.

Defendant also argues that consecutive sentencing is not reasonably related to the seriousness of the offense and is not the least severe measure necessary to protect the public from Defendant's conduct. Defendant further argues that a sentence above the minimum sentence for a Range I, standard offender, convicted of a Class B felony, and the imposition of consecutive sentencing leads to an unjust disparity between Defendant's sentence and that of the other participants in the carjacking.

When a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Tennessee Code Annotated section 40-35-115. "[C]onsecutive sentences may be imposed any time the defendant is convicted of more than one criminal offense; the offenses do not necessarily have to arise from the same proceeding." *State v. Moore*, 942 S.W.2d 570, 572 (Tenn. Crim. App. 1996). A trial court may impose consecutive sentencing when a "defendant is sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(6). "[T]he imposition of consecutive sentencing is also guided by the general sentencing principles that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002)(quoting Tenn. Code Ann. §§ 40-35-102(1) and -103(2)); *see also State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

Based upon our review of the record, we find that the trial court did not err in ordering Defendant to serve his sentence for his carjacking conviction consecutively to his prior sentence.

Defendant argues that the imposition of consecutive sentencing results in "an obvious and unjust disparity in sentences among the co-defendants." Apparently, Mr. Smith and Mr. Williams entered pleas of guilty to the lesser included offense of attempted carjacking and were sentenced to a term of six years for the convictions. The record does not indicate whether these sentences were negotiated pursuant to the pleas, or were imposed following the findings of the trial court that sentenced Mr. Smith and Mr. Williams. Therefore, there is nothing in the record to reveal the basis of the co-defendant's sentences. As this Court has previously observed, a "[d]efendant's failure to include the relevant information in the record prevents us from reviewing this issue to determine whether the disparity in sentencing is justified or not." *State v. Lisa Keys*, No. 03C01-9902-CR-00083, 2000 WL 126931, at *3 (Tenn. Crim. App., Knoxville, Feb. 3, 2000), *perm. to appeal denied* (Tenn. Sept. 18, 2000). Furthermore, "the Sentencing Reform Act of 1989 seeks to eliminate

disparities in sentencing that are unrelated to its purpose, [and] there is no requirement that co-defendants receive equal sentences." *Id.* (citing *State v. Michael Leon Chambers*, No. 01C01-9505-CC-00143, 1996 WL 337340, at *3 (Tenn. Crim. App., Nashville, June 20, 1996), *perm. to appeal denied* (Tenn. 1996)); *see also State v. Retha Jean Smith*, No. W1999-00607-CCA-R3-CD, 2000 WL 1643538 (Tenn. Crim. App., at Jackson, Sept. 14, 2000), *no perm. to appeal filed*. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record, we affirm the judgments of the trial court and the imposition of consecutive sentencing.

_____
THOMAS T. WOODALL, JUDGE