IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 9, 2009

# STATE OF TENNESSEE  v. LARRY EDWARD MOORE, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-A-514      Monte Watkins, Judge**

---

**No. M2008-00703-CCA-R3-CD - Filed February 10, 2010**

---

Following a jury trial, Defendant, Larry Edward Moore, Jr., was convicted of carjacking, a Class B felony.  The trial court sentenced Defendant as a Range III, career offender, to thirty years.  On appeal, Defendant challenges the sufficiency of the convicting evidence and also argues that the trial court erred (1) in not redacting certain statements from Defendant's statement to the police which was introduced as an exhibit at trial; (2) in limiting Defendant's cross-examination of the victim about her use of drugs and whether she had received any compensation from the Victim's Compensation Fund; and (3) in denying Defendant's motion for a mistrial.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Dawn Deaner, District Public Defender; Emma Rae Tennent, Assistant Public Defender; Ginny Flack, Assistant Public Defender; and Katie Weiss, Assistant Public Defender, Nashville, Tennessee, for the appellant, Larry Edward Moore, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Deborah Housel, Assistant District Attorney General; and Latasha Alexander, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

Alysia Blackburn, the victim, testified that on December 27, 2006, she went to a jewelry store on Gallatin Road at approximately 4:15 p.m. to inquire about adjusting a bracelet she had received as a birthday present the day before. The victim left the engine to her grey 1999 Nissan Altima running while she went into the store. From inside the store, the victim observed Defendant walk by and look at her vehicle, so she went outside, turned the engine off, and locked the vehicle. The victim returned to the store, and Defendant entered the business as she was talking to the store's owner, Howard Lane. Defendant asked Mr. Lane if he could use Mr. Lane's telephone to call his wife because his vehicle would not start. When Defendant was unsuccessful in reaching his wife, the victim asked Defendant if she could help, and Defendant responded, "Yeah." The victim and Defendant got into the victim's Altima, and Defendant directed her to drive to a house on Riverwood Drive. The victim said that Defendant told her that he "really appreciate[d] it." The victim stated that she was "just being nice" because she had previously been in a similar situation.

The victim pulled into the driveway indicated by Defendant and began to feel uneasy. The victim stated that Defendant suddenly struck her several times in the face. The victim struggled with Defendant as he attempted to move from the passenger seat to the driver's seat. The victim reached for her purse in the backseat, and Defendant struck her again. The victim stated that she gave up at that point and ceased struggling. She got out of the Altima, and Defendant drove off.

Eugene Skaggs came out of his house and asked the victim if she was all right. The victim said that she was crying, and she told Mr. Skaggs that Defendant had stolen her vehicle. The victim stated:

> [a]nd they kept staring at me, and I'm like, "Is my face messed up?" And he was, like, "Yes, ma'am." So that really made me cry. And I knew that my family [was] going to be upset because I tried to help somebody out.

The victim said that Mr. Skaggs had trouble understanding her because her face was swollen. Mr. Skaggs called the police and the victim's family. The victim was transported to the hospital by ambulance, and the emergency technician was concerned that the victim's jaw was broken. The victim told police officers that Defendant's vehicle was parked at the jewelry store. The victim also told them that her purse was in her vehicle, and it contained, among other items, $212, two cell phones, and a debit card.

The records for the victim's cell phone were introduced as an exhibit at trial and showed that an outbound call was made with the victim's cell phone at 5:22 p.m. on December 27, 2006. The victim stated that she did not recognize the telephone number which received the call. The victim said that she identified Defendant as the perpetrator from a photographic lineup on December 27, 2006.

The victim stated that her jaw was not broken, but her face was bruised and swollen for approximately one and one-half weeks, and people had difficulty understanding her when she tried to speak. The victim said that she never recovered her Altima or any of the items in the vehicle. The victim stated that she did not give Defendant permission to take her vehicle.

On cross-examination, the victim acknowledged that she did not tell the investigating officers that she observed Defendant looking at her vehicle before he entered the store. The victim stated that she did not report the theft of the credit cards to her bank and acknowledged that she was never notified that the credit cards had been used. The victim said that Defendant told Mr. Lane that the alternator on his vehicle was not working, and Mr. Lane and Defendant discussed the location of the nearest car parts store. The victim acknowledged that Defendant did not make any threatening remarks on the drive to Riverwood Drive, and she described him as "nice."

Mr. Skaggs testified that he lived at 1140 Riverwood Drive. Mr. Skaggs stated that he was working at his computer on December 27, 2006, when he noticed on his computer screen the reflection of a vehicle pulling into his driveway. Mr. Skaggs did not recognize the vehicle and thought the driver would turn around. Mr. Skaggs observed a man and woman in the vehicle and believed at first that the man was slapping the woman playfully. Mr. Skaggs then realized that the man was striking the woman, and he went outside. Mr. Skaggs said that the man got out of the vehicle and pulled the victim out. The man then got back in the vehicle and drove off. Mr. Skaggs said that he gave the victim ice for her face and called 911. Mr. Skaggs stated that he was unable to identify the man who drove off in the victim's vehicle.

Howard Lane testified that he owned a jewelry store on Gallatin Road. Mr. Lane knew the victim because she had visited the store before the incident. Mr. Lane said that the victim stopped by the store on December 27, 2006, to check on a bracelet's repair. Mr. Lane said that Defendant entered the store while he was talking to the victim and asked to use Mr. Lane's telephone because his vehicle would not start. Mr. Lane handed Defendant his cell phone, but Defendant was not able to reach anyone. Mr. Lane described Defendant as "cordial," and he, the victim, and Defendant conversed between ten and fifteen minutes. Mr. Lane said that the victim did not have any injuries to her face while she was in the store. Mr.

Lane later identified Defendant from a photographic lineup as the man who left his store with the victim on December 27, 2006.

Officer Jason L. Smith, with the Metro Nashville Police Department, stated that the victim was "crying and very afraid" when he arrived at the residence on Riverwood Drive. Officer Smith observed a contusion on the victim's cheek which was bleeding. Based on the information provided by the victim and Mr. Skaggs, Officer Smith drove to the jewelry store on Gallatin Road. He located a van matching the victim's description and recorded the vehicle's VIN, which he relayed to Detective Michael Windsor with the Metro Police Department. On cross-examination, Officer Smith acknowledged that on his incident report, he indicated that the victim had sustained an "apparent minor injury."

Detective Windsor interviewed the victim at the hospital. Detective Windsor testified that the victim had a large amount of swelling around her cheek and a small laceration in the middle of the swelling. Detective Windsor identified the owner of the van parked near Mr. Lane's jewelry store through its VIN. Detective Windsor developed Defendant as a suspect based on the information received from the vehicle's owner. Detective Windsor prepared a photographic line-up, and the victim identified Defendant as the perpetrator.

Detective Windsor arrested Defendant on December 28, 2006. Defendant was read his *Miranda* rights and executed a written waiver of those rights. A redacted version of the videotape of Defendant's interview was played for the jury. Detective Windsor stated that he determined that the outbound call made by the victim's cell phone on December 27, 2006, at 5:22 p.m. was made to Defendant's home telephone number.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his conviction of carjacking. Specifically, Defendant contends that the evidence failed to show that Defendant used either force or intimidation to take the victim's vehicle. Defendant submits that at most he is guilty of the unauthorized use of a vehicle.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences

which may be drawn from that evidence. *Id*.; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Before considering Defendant's challenge to the sufficiency of the convicting evidence, we observe that we were unable to review the redacted videotape of Defendant's statement to the police which was introduced as Exhibit 6 at trial and played for the jury. The video tape would only play in "fast forward" mode making it impossible to follow the interview. We glean from the record that certain portions of Defendant's statement, primarily those concerning Defendant's comments about his prior convictions, imprisonment, and drug use, were redacted before the videotape was introduced as an exhibit at trial. Defense counsel was aware that there was a problem with the videotape as reflected in her motion filed with this Court on December 31, 2008. Within this motion, defense counsel informed this Court that when she attempted to view Exhibit 6 after trial, she was unable to play back the recording, but she did not provide any clarification as to the type of problem she encountered. Defense counsel stated, however, that she was able to produce a viewable DVD copy of the videotape containing the redacted version of Defendant's statement. Defense counsel explained that "[c]oncerned that this Court and the Attorney General may face similar difficulties playing the VHS tape, [she was] seeking to have the trial court certify the DVD as a supplemental exhibit to the record in this case, pursuant to T.R.A.P. 24(e)." There is no indication, however, that defense counsel followed through with this intention. In her brief, defense counsel said that she was unable to include the DVD in the record on appeal because the State refused to stipulate to the accuracy of the DVD.

Rule 24(e) of the Tennessee Rules of Appellate Procedure, provides:

> [i]f any matter properly includable is omitted from the record . . . or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court.

The record may be corrected or modified "at any time, either pursuant to stipulation of the parties or on the motion of a party or the motion of the trial or appellate court." Tenn.

R. App. P. 24(e), Comm'n Cmts. Thus, notwithstanding the State's unwillingness to enter into a stipulation as to the contents of the DVD, it appears that defense counsel did not take the necessary steps in the trial court to insure a complete record on appeal.

It is the responsibility of appellant to prepare an accurate and complete record of what transpired in the trial court with respect to each and every issue that forms the basis for the appeal. Tenn. R. App. P. 24(b); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). Nonetheless, we conclude that the record is sufficient under the facts of this case to permit meaningful review of this issue, and, in the interests of justice, we do so.

Carjacking, as charged in this case, "is the intentional or knowing taking of a motor vehicle from the possession of another by use of . . . [f]orce or intimidation." T.C.A. § 39-13-404(a)(2). "'Force' means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title." *Id*. § 39-11-106(12).

Defendant's unredacted statement, which was introduced as Exhibit 1 at the suppression hearing but not at trial, is included in the record on appeal. In his statement, Defendant admitted to the investigating officers that he took the victim's vehicle without her permission, but he insisted that force was not involved. Defendant said that the victim charged him twenty dollars for the ride, drove him to a residence on Riverwood Drive, and then exited the vehicle, leaving the car keys and her belongings behind. Defendant waited for her return for a few minutes and then drove back to the jewelry store to check on his van. Defendant stated that he returned to Riverwood Drive, waited a few minutes more, and then drove away in the victim's vehicle. Defendant said that he left the vehicle in the parking lot of a gas station near the jewelry store with the keys in the ignition. During his interview, Defendant repeatedly denied striking or otherwise intimidating the victim to gain access to the vehicle.

Viewing the evidence in a light most favorable to the State, however, the victim testified that she offered Defendant a ride when he was unable to reach anyone after his vehicle failed to start. Defendant directed the victim to a residence on Riverwood Drive. After the victim pulled into the residence's driveway, Defendant struck her in the face several times as he attempted to climb into the driver's seat from the passenger seat. The victim said that she struggled with Defendant but eventually gave up when Defendant struck the victim one last time as she attempted to retrieve her purse from the backseat. The victim exited the car, and Defendant drove off. Mr. Skaggs observed Defendant strike the victim while he and the victim were inside the car. Mr. Skaggs stated that the man inside the vehicle immediately drove off after the victim exited the vehicle, and Mr. Skaggs rendered assistance to the victim. Mr. Skaggs described the injuries the victim sustained as a result of her encounter

with Defendant. The victim testified that neither her vehicle nor her other personal belongings contained in it were recovered.

The weight and credibility of the State witnesses' testimony and the reconciliation of conflicts in their testimony, if any, are matters entrusted exclusively to the jury as the trier of fact. By its verdict, the jury obviously found the testimony of the State's witnesses to be credible, and rejected Defendant's description of his interaction with the victim on December 27, 2006. Defendant's conduct of striking the victim repeatedly in the face until she relinquished control of her vehicle is sufficient to support a finding that Defendant intentionally and knowingly took possession of the victim's vehicle without her permission and with the use of force. Based on our review, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant was guilty of the offense of carjacking. Defendant is not entitled to relief on this issue.

## III. Evidentiary Issues

### A. Redactments from Videotaped Statement

Defendant argues that the trial court erred in not redacting certain comments from his videotaped statement which he made about his wife during the interview. Defendant contends that such statements were not relevant to a material issue at trial and were prejudicial because they cast him in a bad light before the jury.

The trial court conducted a pre-trial hearing concerning Defendant's request for redactions, and the State agreed to redact Defendant's comments about his prior criminal history and his use of drugs, and Detective Windsor's comments about the potential charges Defendant was facing. Defendant then requested the redaction of his comments about his wife, and the following colloquy occurred:

THE COURT: You're saying it's just not relevant?

[DEFENSE COUNSEL]: Whether he gets along with his wife or not is completely irrelevant to this incident.

THE COURT: Well, that's basically true but [does] it fall within the area where it should be redacted? I mean, irrelevant information comes in at trial all the time.

. . .

[DEFENSE COUNSEL]:   It's irrelevant, and the point is its prejudicial.

THE COURT:             Well, that's the point I'm making, whether its prejudicial.

After further discussion, the trial court stated that it would make a final ruling on the day of trial but it does not appear from the record that the trial court ruled on Defendant's motion. The State introduced Defendant's redacted videotaped statement during Detective Windsor's direct examination as Exhibit 6 without further objection by Defendant. Prior to playing the videotape for the jury, the State requested a bench conference in the presence but out of the hearing of the jury which was not transcribed. The videotape was then played, again without further objection by Defendant.

It appears that the trial court's initial response to Defendant's objection was that the challenged evidence was not relevant, but that Defendant had failed to show that it was prejudicial. *See* Tenn. R. Evid. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Although as the trial court observed, irrelevant evidence may make its way into a trial, this generally occurs only when the party against whom the evidence is offered fails to object. *See State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000) (quoting *State v. Harrington*, 627 S.W.2d 345, 348 (Tenn.1981)) (holding that "[w]hen a party does not object to the admissibility of evidence . . . the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural probative effects as if it were in law admissible'"). Our rules of evidence, however, clearly provide that "[e]vidence which is not relevant is not admissible." Tenn. R. Evid. 402.

Nonetheless, it does not appear that the trial court made a definitive ruling on the admissibility of the challenged statements before the videotape of Defendant's redacted statement was played for the jury, nor does the record indicate that Defendant renewed his objection prior to the playing of the videotape to the jury. Once a trial court "makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Tenn. R. Evid. 103(a)(2). As this Court has cautioned, however, "where the 'issues are only tentatively suggested or the record only partially and incompletely developed in connection with a motion in limine, . . . [c]ounsel necessarily take some calculated risks in not renewing objections." *State v. Alder*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001) (quoting *State v. McGhee*, 746 S.W.2d 460, 462 (Tenn. 1998)); *see also* Tenn. R. App. P. 36 (a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to

-8-

prevent or nullify the harmful effect of an error"). Also hindering our review is the fact that we do not have a reviewable copy of the redacted version of Defendant's statement to the police, and we, therefore, do not know which portions were redacted and which were not. When the record is incomplete on an issue or does not contain the proceedings relevant to an issue, this court is precluded from considering the issue. Tenn. R. App. P. 13(c); *Miller*, 737 S.W.2d at 558; *State v. Griffin*, 649 S.W.2d 9, 10 (Tenn. Crim. App. 1982); *State v. Hoosier*, 631 S.W.2d 474, 476 (Tenn. Crim. App. 1982). Moreover, because the record does not clearly establish what occurred in the trial court, Defendant may not find relief under a plain error analysis. Tenn. R. App. P. 36(b); *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). Based on the foregoing, we conclude that Defendant has waived appellate review of this issue and is not entitled to relief.

### B. Victim's Compensation Fund

Defendant argues that the trial court erred in not allowing him to cross-examine the victim about her claim for criminal victim's injury compensation under Tennessee Code Annotated section 29-13-101, et. seq. During the victim's cross-examination, the following colloquy occurred:

| | |
|---|---|
| [DEFENSE COUNSEL]: | Now, we've talked about some of the things that you lost out on, and that were missing from you, not, of course, the least of which was the car. You applied for and got a check from the victim's compensation fund, right? |
| [THE VICTIM]: | Yes, ma'am. |
| [THE STATE]: | Judge, I'm going to object to the relevance on this. |
| THE COURT: | Sustained. |
| [DEFENSE COUNSEL]: | That's fine. |
| [THE STATE]: | Thank you, your Honor. I'd ask that that be stricken. |
| THE COURT: | Members of the jury, strike that question and answer. It has nothing to do with this case. |

Defendant did not respond to the State's objection nor object to the trial court's ruling. To the contrary, Defendant simply responded, "That's fine," and did not make an offer of proof with regard to the excluded evidence. Instead, Defendant abandoned this line of questioning when the victim's cross-examination was resumed. Based on our review, we conclude that Defendant has failed to properly preserve this issue for appeal. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); *State v. Rhoden*, 739 S.W.2d 6, 12 (Tenn. Crim. App. 1987) (finding waiver where "no effort was made to advise the trial court of the evidence the appellant would seek to introduce at trial or make an offer of proof so an informed ruling could by made by the trial judge). Defendant is not entitled to relief on this issue.

## C. Limitation of the Victim's Cross-Examination

Defendant argues that the trial court's exclusion of evidence that the victim used drugs violated his constitutional right to present a defense. Defendant submits that there was a factual basis for the inquiry, and that such evidence "would have corroborated crucial elements of the defense." Defendant also contends that the trial court improperly invaded the province of the jury by making its own assessment of the victim's credibility during the jury out hearing and encroached upon Defendant's right to trial by jury.

The victim filled out a medical questionnaire pertaining to a CT Scan at the hospital after the incident. The questionnaire asked, "Do you smoke?" The victim wrote, "Yes." Beside the question, "If yes, number of years," the victim wrote, "4." In response to the question, "Packs per day," the victim wrote "marijuana." The victim did not answer the next question, "If you have quit smoking, when?" The State, anticipating Defendant's intent to cross-examine the victim about her drug usage based on these responses, asked for a hearing out of the presence of the jury before the victim was called to testify on direct examination. The State essentially sought to exclude the evidence on relevancy grounds. During the offer of proof, the victim explained that she wrote the number "4" on the medical form because she stopped using marijuana four years prior to filling out the form. The victim testified that she did not use drugs in 2006, and specifically did not use drugs on December 27, 2006. On cross-examination, the following colloquy occurred:

[DEFENSE COUNSEL]:   The first line says "Do you smoke," right?

[THE VICTIM]:   Yes, ma'am.

[DEFENSE COUNSEL]:   It doesn't say, "Did you smoke," does it?

[THE VICTIM]:              No, ma'am.

[DEFENSE COUNSEL]:    Okay. And you took that to mean that it would be relevant that you smoked four years ago?

[THE VICTIM]:              Actually, to be honest, I wasn't really paying attention. . . . I was in a state of shock. And all my life I'm always in a rush to do anything, so I was just writing.

At the jury-out hearing, Defendant argued that the victim's drug usage was relevant because it addressed "the motive for this event" which Defendant described as "a strange crime." Based on the victim's testimony during the offer of proof, Defendant also argued that the discrepancy between the victim's responses on the medical questionnaire and her in-court explanation of the responses called into question the victim's credibility.

At the conclusion of the offer of proof, the trial court found:

Well, this, really, sort of blends several issues, one of which is 404 issues, as to whether this matter has probative value, whether it's relevant in this particular case. Under 404 unless it fits under one particular – any particular exception – this is not a matter that needs to go to the jury . . . because you're trying to prove – it basically goes to the character of the person. And the Court simply believes, with respect to the 404 issue, it is not a relevant matter and should be excluded.

Now what about the issue of credibility? The Court is always concerned about a witness's credibility. But again, here is a case where whether she smokes marijuana, or does not smoke marijuana, or smoked marijuana in the past, the Court doesn't see that as a credibility issue. I think the argument being made by the defense is whether her answers to particular questions raised an issue of credibility. She is the one who answered the direct questions that she had not smoked for at least four years, did not smoke that day, or during that month, and didn't smoke that day in particular because she worked two jobs, apparently meaning that she couldn't smoke and work two jobs as well at the same time. So – witnesses are, obviously, presumed to be truthful. Her explanation for how she interpreted the questions and the reasons for the answers she gave, those have to, basically, be accepted by the Court. I will allow this to be made a separate exhibit for other purposes, but making

-11-

that a fact issue at trial, the Court just doesn't see that that is appropriate, because this really doesn't have anything to do with the trial itself.

Our supreme court has recognized that "[t]he Sixth Amendment and the Due Process Clause of the Fourteenth Amendment clearly guarantee a criminal defendant the right to present a defense." *State v. Brown*, 29 S.W.3d 427, 432 (Tenn. 2000). A defendant's constitutional right to confront the witnesses against him includes the right to conduct meaningful cross-examination. *State v. Wyrick*, 62 S.W.3d 751, 770 (Tenn. Crim. App. 2001). Denial of the defendant's right to effective cross-examination is "'constitutional error of the first magnitude'" and may violate the defendant's right to a fair trial. *State v. Hill*, 598 S.W.2d 815, 819 (Tenn. Crim. App. 1980) (quoting *Davis v. Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 1112 (1974)). "The propriety, scope, manner and control of the cross-examination of witnesses, however, rests within the sound discretion of the trial court." *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995); *Coffee v. State*, 216 S.W.2d 702, 703 (1948). Furthermore, "a defendant's right to confrontation does not preclude a trial court from imposing limits upon cross-examination which take into account such factors as harassment, prejudice, issue confrontation, witness safety, or merely repetitive or marginally relevant interrogation." *State v. Reid*, 882 S.W.2d 423, 430 (Tenn. Crim. App. 1994).

In *State v. Brown*, our supreme court set forth the necessary analysis when determining whether the constitutional right to present a defense has been violated by the exclusion of evidence. *Brown*, 29 S.W.3d at 433-434. Specifically, we must consider "whether: (1) the excluded evidence is critical to the defense; (2) the evidence bears sufficient indicia of reliability; and (3) the interest supporting exclusion of the evidence is substantially important." *Id*. at 434.

"[W]hether excluded evidence is critical to a defense is a fact-specific inquiry." *State v. Flood*, 19 S.W.3d 307, 317 (Tenn. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 303, 93 S. Ct. 1038, 1049 (1973)). "Our supreme court has suggested that for evidence to be considered critical to the defense, the evidence must have some probative value and 'exclusion of the evidence would undermine an element of a particular defense.'" *State v. Cyntoia Denise Brown*, No. M2007-00427-CCA-R3-CD, 2009 WL 1038275, at *29 (Tenn. Crim. App., at Nashville, Apr. 20, 2009), *perm. to appeal denied* (Tenn. Sept. 28, 2009)(quoting *Flood*, 219 S.W.3d at 317). Regarding the third *Brown* factor, the interests supporting exclusion of the evidence, a criminal defendant's right to confront and cross-examine witnesses against her or him is limited by Rule 402 of the Tennessee Rules of Evidence in that neither party "may cross-examine a witness on matters that are irrelevant." *State v. Williams*, 929 S.W.2d 385, 389 (Tenn. Crim. App. 1996). As our supreme court has observed, "the right to confront witnesses is satisfied if defense counsel receives wide latitude at trial to cross-examine, because the confrontation clause only guarantees 'an

opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish.'" *State v. Middlebrooks*, 840 S.W.2d 317, 332-33 (Tenn. 1992), *superceded by statute on other grounds as stated in State v. Stout*, 46 S.W.3d 689, 705 (Tenn. 2001).

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Under Tennessee Rule of Evidence 402, irrelevant evidence is not admissible. Relevant evidence is generally admissible but may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See id*. 402, 403. A trial court's evidentiary ruling based on relevance is reviewed on appeal for an abuse of discretion. *See State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997).

### i. Character Evidence

At the hearing, the trial court found that the victim's use of drugs was character evidence that was not relevant and, therefore, inadmissible under Rule 404 of the Tennessee Rules of Evidence. Defendant argues, however, that "evidence that the victim used drugs regularly, used drugs that day, or was seeking to buy drugs would have corroborated crucial elements of his defense." That is, the evidence would corroborate "the suggestion raised in [Defendant's] statement that his interactions with the victim were drug-related," and "would have undermined the account of events presented by the State." Defendant points out that he told Detective Windsor that the victim charged him twenty dollars for the ride, the victim drove to a residence on Riverwood Drive, the victim exited her vehicle and never returned.

Generally, Rule 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith." Tenn. R. Evid. 404(a). Nonetheless, evidence of a victim's character may be admissible under certain circumstances. For example, under Rule 404(a)(2), the defendant in a criminal case may offer "evidence of a pertinent trait of character" of the victim. "Evidence is called 'pertinent' when it is directed to the issue or matters in dispute, and legitimately tends to prove the allegations of the party offering it." *Black's Law Dictionary* 1145 (6th ed. 1990). In other words, to qualify as "pertinent," the character evidence must be relevant. *Id*.

According to Defendant's unredacted statement, which is the only reviewable copy of Defendant's videotaped statement in the record on appeal, Detective Windsor asked Defendant why the victim would leave him unattended in her vehicle with her purse and car keys for an expended period of time. Defendant said that he believed the victim simply wanted his twenty dollars. Defendant stated that he did not know if the victim had a drug

problem like himself, but explained that he did not believe the victim wanted his money to purchase drugs. Defendant said that he did not think the house on Riverwood Drive was a "drug house" because it was "not that kind of neighborhood." Defendant later insisted during the interview that the incident "didn't have nothing [sic] to do with drugs."

The record on appeal does not indicate whether these comments were redacted from Defendant's statement before the videotaped statement was played for the jury. Nonetheless, Defendant's theory at trial focused on his suggestion that his altercation with the victim was prompted by some event other than the taking of her vehicle. Defendant contends that information concerning the victim's use of drugs would provide circumstantial evidence to support his suggestion that the reason he struck the victim was drug-related. Defendant's theory of defense at trial, however, was just that, a suggestion based solely on the argument of counsel. *State v. Roberts*, 755 S.W.2d 833, 836 (Tenn. Crim .App. 1988) (citations omitted) (observing that the arguments of counsel are not evidence); *State v. Calvin Lee Sneed*, No. 03C01-9611-CR-00444, 1998 WL 309137, at *10 (Tenn. Crim. App., at Knoxville, June 12, 1998), *perm. to appeal denied* (Tenn. Feb. 16, 1999) (concluding that testimony that the victim "knew how to push [the defendant's] button" was pertinent character evidence when the proof at trial fairly raised the issue of adequate provocation in a first degree murder case). There was no evidence presented at trial that drugs were in any way related to the offense, and defense counsel did not attempt during the offer of proof to establish any causal connection between the victim's use of marijuana, whether current or prior, and the taking of her vehicle. Any suggested connection, standing alone, between the victim's use of drugs and Defendant's culpability for the charged offense is too tenuous for this testimony to be considered critical to the defense. We conclude that the trial court did not err in excluding the evidence on this basis.

### ii. Victim's Credibility

Defendant argues that the trial court improperly based its evidentiary rulings during the offer of proof on its own assessment of the victim's credibility. Defendant submits that by finding that the victim's explanations as to the responses on the medical questionnaire "have to be accepted by the court," the trial court prevented the jurors "from making a fair and informed judgment of the crucial witness's credibility" in violation of Defendant's Sixth Amendment right to trial by jury.

We agree with Defendant's argument to the extent that the procedure utilized by the trial court during the hearing was improper in part. The function of an offer of proof is to demonstrate the substance, purpose, and relevance of the excluded evidence so that the trial court may make an informed ruling. *Alley v. State*, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994). In so doing, however, it is well established that the jurors are the sole arbiter of

credibility issues. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Thus, "[a]ny withholding of a factual issue from the jury's determination because of judicial disbelief [or belief] of a witness would invade the province of the jury and impinge upon a defendant's constitutional right to trial by a jury." *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993).

At the jury-out hearing, the State essentially argued that potentially damaging impeachment evidence is not "relevant" if it is shown during an offer of proof that the evidence is either "not true" or can be "explained away." However, these are factors that are reserved for exploration during redirect examination if, indeed, the challenged evidence is relevant and its probative value is not outweighed by its prejudicial effect. Tenn. R. Evid. 402, 403. If the trial court found that evidence of the victim's drug use, whether prior or current was relevant, it could not then exclude the evidence because the trial court believed the witness's explanation as to why she answered the medical questions as she did. In other words, a trial court cannot find otherwise relevant evidence irrelevant based on its assessment of the witness's credibility during the jury-out hearing.

Although the victim's drug use was inadmissible as substantive evidence under Rule 404(a)(2), evidence of a witness's character may be admissible under Rules 607 and 608 as impeachment evidence. Rule 607 of the Tennessee Rules of Evidence provides that "the credibility of a witness may be attacked by any party." Rule 608(b) of the Tennessee Rules of Evidence provides that:

> [s]pecific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness. . . .

Tenn. R. Evid. 608(b).

This Court, however, has previously found that a witness's use of drugs is not probative of truthfulness or untruthfulness. *State v. Bledsoe*, 626 S.W.2d 468, 470 (Tenn. Crim. App. 1981); *Hatchett v. State*, 552 S.W.2d 414, 415 (Tenn. Crim. App. 1977); *State v. Craig Stephen Bourne*, No. 03C01-9807-CR-00237, 1999 WL 826016, at *8 (Tenn. Crim. App., at Knoxville, Oct. 18, 1999), *perm. to appeal denied* (Tenn. Apr. 24, 2000); *State v. Tommy Mack Blevins*, No. 01C01-9501-CC-00010, 1995 WL 408263, at *2 (Tenn. Crim. App., at Nashville, July 6, 19995), *perm. to appeal denied* (Tenn. Nov. 6, 1995). In *Hatchett*, this Court observed:

[t]he simple possession of marijuana is a misdemeanor. . . . This is not a crime involving moral turpitude, or a crime of such character that the conviction itself would discredit the testimony of the defendant. There is no connection between the use or possession of marijuana and the veracity of a witness.

*Hatchett*, 552 S.W.2d at 415 (citations omitted).

Defendant also submits that the medical questionnaire was a prior inconsistent statement admissible pursuant to Rule 613. *See* Tenn. R. Evid. 613 (providing that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless and until the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require"). Thus, in order to introduce the medical questionnaire as extrinsic evidence, Defendant must first ask the victim during cross-examination if she used drugs. Because this question is not proper impeachment evidence under Rule 608(b), Defendant may not pose an otherwise irrelevant question as a prelude for introducing the medical questionnaire under Rule 613. A party "cannot ask a witness an irrelevant but prejudicial question, and then, under the theory of impeachment, predicate a second irrelevant and prejudicial question upon the [witness's] response to the first question." *State v. Adkisson*, 899 S.W.2d 626, 646 (Tenn. Crim. App. 1994); *see also State v. Leech*, 148 S.W.3d 42, 56 (Tenn. 2004) ("Impeachment by extrinsic evidence as contemplated by Rule 613 must relate to facts relevant to a material issue at trial."); *State v. Jones*, 15 S.W.3d 880, 892 (Tenn. Crim. App. 1999) (observing that "[i]mpeachment cannot be a 'mere ruse' to present to the jury prejudicial or improper testimony"); *Hatchett*, 552 S.W.2d at 415 (concluding that because the question concerning the defendant's prior drug use was not proper for impeachment purposes under Rule 608(b), a follow-up question concerning the defendant's prior conviction for possession of marijuana after the defendant denied that he used drugs was also improper).

Based on a thorough review of the record, we conclude that although the trial court's procedure during the jury-out hearing was improper in part, the grounds advanced by Defendant at the jury-out hearing for admitting the evidence of the victim's drug use at trial were ultimately determined to be inadmissible on the basis of the rules of evidence and not an assessment of the victim's credibility. Defendant is not entitled to relief on this issue.

## IV. Closing Argument

Defendant argues that the trial court erred in not granting his request for a mistrial on the basis that the prosecutor impermissibly commented on Defendant's decision not to testify

-16-

at trial. The State contends that its comments during rebuttal closing argument were a direct response to Defendant's comments during his counsel's closing argument.

During closing argument, Defendant pointed out the inconsistencies between the testimony of the victim, Mr. Skagg, and Mr. Lane and stated:

[b]ut you heard the testimony. And you must be left with part of you thinking, "they didn't, this wasn't, that's not what happened. [Defendant and the victim] left together in this car and what occurred in this car, we simply don't know because [the State] didn't bother to find out.

During rebuttal closing argument, the State responded as follows:

[THE STATE]:               And when the defendant was asked, "What was wrong with your van," the defendant said, "uh-uh, it overheated." When he had already said to another witness, [the victim], it was the alternator. Was it overheated? Was it the alternator? Who knows? Did he walk by Ms. Blackburn's car and see it filled with Christmas [gifts] and think, "I want that?" I don't know. That's something that the defendant can tell us, but he didn't tell –

[DEFENSE COUNSEL]:   I am going to object, Your Honor.

[THE STATE]:               He did not tell Detective Windsor when he was –

THE COURT:              Well, he didn't testify, obviously.

[DEFENSE COUNSEL]:   He has no obligation to prove anything.

THE COURT:              Yes. Obviously he has no obligation to testify.

[DEFENSE COUNSEL]:   Not just to testify. To prove anything, to present any evidence in his case.

THE COURT:              I understand that, [defense counsel]. All right.

[THE STATE]:               He didn't tell Detective Windsor that. You didn't hear that. He said a whole bunch of things to Detective Windsor, but he didn't say that.

At the conclusion of the State's rebuttal closing argument, Defendant requested the trial court to declare a mistrial based on the foregoing comments by the prosecutor, which the trial court denied.

A mistrial should be declared in criminal cases only in the event that a manifest necessity requires such action. *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). In other words, a mistrial is an appropriate remedy when a trial court cannot continue without causing a miscarriage of justice. *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). The decision to grant a mistrial lies within the sound discretion of the trial court, and that decision will not be overturned on appeal absent a clear abuse of that discretion. *State v. Hall*, 976 S.W.2d 121, 147 (Tenn. 1998) (citing *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990)). The burden of establishing the necessity for a mistrial lies with the party seeking it. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

Closing argument is a valuable tool for the parties during the trial process. *State v. Humphreys*, 70 S.W.3d 752, 767 (Tenn. Crim. App. 2001). Attorneys are generally given wide latitude in the scope of their arguments. *State v. Berry*, 141 S.W.3d 549, 586 (Tenn. 2004). Consequently, a trial court is accorded wide discretion in its control of the closing arguments. *State v. Zirkle*, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). We will not interfere with that discretion in the absence of abuse. *State v. Sutton*, 562 S.W.2d 820, 823 (Tenn. 1978). To show error, a defendant must show that the argument was so inflammatory or the conduct so improper that it affected the verdict to the defendant's detriment. *Zirkle*, 910 S.W.2d at 888.

It is well established that "[a] prosecutor is strictly prohibited from commenting on the defendant's decision not to testify." *State v. Thacker*, 164 S.W.3d 208, 244 (Tenn. 2005) (citing *State v. Reid*, 91 S.W.3d 247, 297 (Tenn. 2002)). However, it is well-established that "a district attorney general may argue that the State's evidence is uncontradicted. [Such] argument does not violate the rule prohibiting comments on the failure of the defendant to testify in support of his defense." State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999 (citing *State v. Rice*, 638 S.W.2d 424 (Tenn. Crim. App. 1982).

It appears from the record that the prosecutor could have been heading in the direction of making an improper comment on Defendant's decision not to testify. However, after Defendant's prompt objection in the middle of the prosecutor's sentence, the prosecutor concluded with "did not tell Detective Windsor." *See State v. Reid*, 91 S.W.3d 247, 296

(Tenn. 2002) (concluding that it was not improper closing argument for the prosecutor to comment on Defendant's failure to explain the presence of his fingerprints on the victim's property during his statement to the police which was videotaped and played for the jury). Based on our review, we conclude that the prosecutor's closing comments do not warrant a mistrial. Accordingly, the trial court did not abuse its discretion in denying Defendant's request for a mistrial. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE